403 So.2d 936 (1981)
Eddie ODOM, Appellant,
v.
STATE of Florida, Appellee.
No. 50575.
Supreme Court of Florida.
July 23, 1981.
Rehearing Denied October 15, 1981.
*938 J. Craig Williams and James O. Brecher of Taylor & Brecher, Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Fourth Judicial Circuit, Duval County. In a jury trial, appellant was convicted of murder in the first degree. The court imposed a sentence of death. This Court has jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const.
Appellant presents several contentions of reversible trial error. For reasons to be discussed below, we find them to be without merit. Furthermore, the verdict is supported by the evidence. There being no reversible error going to the conviction of murder in the first degree, we affirm it. Finding that the state failed to establish any statutory aggravating circumstances, however, we hold that the sentencing court should have adopted the jury's recommendation of life imprisonment. We vacate the sentence of death and order that appellant be sentenced to life imprisonment without eligibility for parole for twenty-five years.

I. FACTS
On January 27, 1976, Joe Richards went to Eddie Odom's home and made threats to Nira Gail Odom, appellant's wife. She called the police. Odom, who had been absent, came home and then police officers arrived. While the police were there, Richards telephoned Odom. The police officers listened on an extension phone as Richards claimed that appellant owed him money and threatened to kill him if he did not pay. That night, Odom, Robert Lewis, and Charles Jimmy Carter went to Richards' home. Carter waited in a van while Odom and Lewis went to a bedroom window of the house and shot Richards, instantly causing his death. Two women were in the room with Richards. One of them sustained a minor shotgun wound.
Charles Jimmy Carter, originally arrested on a charge of first-degree murder, was given immunity and testified that he drove the van to Richards' house with Odom and Lewis as his passengers. Odom and Lewis, he said, armed with a .30-.30 rifle and a shotgun respectively, went up to the house. Carter testified that he then heard gunshots, after which Odom and Lewis came running back to the van. They got in, and he drove to a bridge over the Trout River. He threw the rifle over the side of the bridge. Carter said that he participated in the killing because he, like Odom and Lewis, mortally feared Joe Richards.
Barbara Jones, sister of Nira Gail Odom, testified that she was at the Odom home on January 27 and heard Richards' threats. She testified that that afternoon, Odom borrowed a .30-.30 rifle from her nephew, Michael Hilliard. She was also there at 10:00 p.m. that night when appellant came in saying, "It's over. He's dead." Barbara Jones testified that Odom then talked in detail about the shooting.
Barbara Jones' husband Gerald Jones testified that he, too, was present and heard appellant admit his participation in the murder. Gerald and Barbara Jones contacted the authorities, they said, because they felt they were in danger from Lewis and Carter on account of their knowledge *939 of the crime. Subsequently Gerald Jones, in cooperation with police, wore a hidden transmitter and engaged Odom in a conversation in which he made incriminating statements which the police recorded. The recording was admitted in evidence and Jones testified about the contents of the recorded conversation.
Police recovered a .30-.30 rifle from the Trout River. Michael Hilliard identified it as the one he gave to Odom. Several months before the crime, the rifle had been fired in a wooded area. Police recovered a spent .30-.30 casing from the place where the rifle had been fired. Three casings were found at the scene of the murder One casing was found in the rifle recovered from the river. A ballistics expert testified that all five were fired by the same weapon. The expert stated further that because of corrosion he was unable to determine whether the rifle recovered from the river was that weapon.
We conclude from our review of the record that the verdict of guilt was supported by competent, substantial evidence.

II. ISSUES ON APPEAL OF THE JUDGMENT OF CONVICTION

A.
Odom argues that the court should not have admitted into evidence the tape recording of his conversations with Gerald Jones. Although we rule that the tape was improper evidence, we do not reach this conclusion on any of the grounds argued by appellant. In support of his motion to suppress the tape, he argued that admission would violate his rights under the Fourth and Fifth Amendments to the United States Constitution. These contentions are without merit. When Jones visited Odom and engaged him in conversation, there was no compulsion used. Odom's statements were purely voluntary. In order for the right against self-incrimination to be involved when statements are made, there must at least be some kind of compulsion. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), cited by appellant, it was held that there is compulsion inherent in custodial interrogation. Here there was no compulsion, so appellant's Fifth Amendment rights were not violated. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
Having heard the appellant voluntarily make statements of an incriminating nature concerning his participation in the crime, Jones clearly could have testified from memory about the content of the statements. The Fourth Amendment does not protect a person from the possibility that one in whom he confides will violate the confidence. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). If this is so, then there is no bar under the United States Constitution to the introduction of more reliable and perhaps more credible evidence  recordings made by the informer or agent to whom the statements are made. United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).
Appellant also argues that the admission of the tape into evidence violated chapter 934, Florida Statutes (1975). Under the statute as written this argument is without merit. In enacting chapter 934, the legislature did not give article I, section 12, Florida Constitution, the interpretation we give it today. Thus the legislature did not intend to require a court order for the interception of wire or oral communications when one of the parties to the communication consents to the interception. § 934.01(4), Fla. Stat. (1975). Chapter 934 declares that it is lawful
for a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
§ 934.03(2)(c) Fla. Stat. (1975). Since the tape in question was made by way of the cooperation of Mr. Jones acting under the *940 direction of law enforcement officers, the interception did not violate chapter 934, and was admissible evidence as far as the statute is concerned. See § 934.06, Fla. Stat. (1975).
We find, however, that the admission of the tape into evidence was error under the constitutional rule excluding evidence obtained in violation of article I, section 12 of the Florida Constitution. That section of our Declaration of Rights provides:
SECTION 12. Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
In State v. Sarmiento, 397 So.2d 643 (Fla. 1981), we held that the warrantless electronic monitoring by state agents of a conversation between the accused and an undercover police officer was an unreasonable interception of a private communication in violation of article I, section 12. Based on this principle, we held that the trial court should have excluded the testimony of police officers who, without obtaining an interception warrant, listened to the conversation by means of an electronic transmitter concealed on the person of the undercover agent. Applying the same principle to the present case, we find that the warrantless recording of the conversation between appellant and witness Jones was an unreasonable interception.
Evidence obtained in violation of article I, section 12 is inadmissible in Florida courts. Sing v. Wainwright, 148 So.2d 19 (Fla. 1962); Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927). This constitutional principle applies regardless of whether the evidence in question was obtained in violation of the Fourth Amendment, and regardless of the scope of the Fourth Amendment exclusionary rule. Taylor v. State, 355 So.2d 180 (Fla.3d DCA 1978).
The evidence, therefore, should have been excluded. The admission of the tape into evidence, however, does not require reversal of the judgment. There was other evidence of appellant's guilt sufficient to support the jury's verdict. The improperly obtained evidence was merely cumulative. The error of allowing such evidence to go to the jury was harmless.

B.
Appellant also contends that the tape of the conversation was so inaudible and unintelligible that it should not have been admitted in evidence. We have already held the admission of the tape error, but harmless because of independent evidence. The partial inaudibility of the tape, which was merely cumulative evidence, did not prejudice the defendant.
The trial court ruled that the inaudible and unintelligible portions of the tape were not so substantial as to deprive the remainder of relevance. Partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible. Todisco v. United States, 298 F.2d 208 (5th Cir.1961), cert. denied, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527 (1962); Monroe v. United States, 234 F.2d 49 (D.C. Cir.), cert. denied, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); Brady v. State, 178 So.2d 121 (Fla.2d DCA 1965); Gomien v. State, 172 So.2d 511 (Fla.3d DCA 1965). Although the tape was improper under the interpretation of "unreasonable interception" that we provided in Sarmiento, it was not so viewed at the time of the trial. So, the trial court evaluated appellant's inaudibility objection according to the above-stated standard. The question of whether the recordings were admissible under this standard was for the trial judge. *941 Appellant has not shown that the court's ruling on the inaudibility objection was error.

C.
Appellant next argues that the judge erred when he allowed the state crime laboratory's ballistics expert to testify after learning of his conversation with a local officer. In this conversation the local officer, a friend of the witness, gave his opinion of the nature of the case and the character of defendant Eddie Odom. He expressed the hope that the jury would convict. He indicated his opinion that the victim was a dangerous criminal and that with a "good verdict" on appellant, there would be two bad characters "off the street." The defense, after the court's inquiry into the circumstances of this conversation, moved for a mistrial and moved to have the ballistics expert's testimony excluded. The court ruled that if the expert's testimony were confined to matters contained in his written report prepared before trial, there would be no possibility of bias coloring his testimony, and allowed the witness to testify with this condition. If the witness had colored his testimony, he could have been impeached by his own report.
The purpose of the rule of sequestration of witnesses "is to avoid the coloring of a witness's testimony by that which he has heard from other witnesses who have preceded him on the stand." Spencer v. State, 133 So.2d 729, 731 (Fla. 1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962). Seen in this light, the incident in question was not even a violation of the rule. The harm that an event such as the incident in question might cause to the fairness of a trial would be just as readily caused by a witness who is prejudiced against the defendant but who has no contact with another witness or with anyone at all during the trial. The defendant's remedy in such a case is to try to disqualify the witness for interest or to impeach his credibility. The appellant made no attempt to present the circumstances and content of the conversation to the jury. Perhaps defense counsel thought that to do so would have the effect of harming the defendant rather than impeaching the witness.
Assuming, however, that there was a violation of the rule, the question that then arose before the court below was how to remedy it. This was a matter for the court's discretion. Rollins v. State, 256 So.2d 541 (Fla. 4th DCA 1972). The court made an inquiry into the circumstances of the conversation and issued a ruling which we find to have been not only within the range of discretion, but eminently fair and reasonable.

D.
Appellant contends that the trial judge should have granted his motion for a mistrial after he learned that a juror had received a threatening telephone call and had told one of the alternate jurors about it. The juror told a bailiff about the call and the bailiff informed the court. The jurors were interviewed in chambers by the court and counsel for both parties. The juror who received the threatening phone call testified that the caller did not make clear to him what kind of result was desired. The juror did not know which way the threat went. Therefore he did not know what kind of action on his part would keep him free of the threatened harm. The juror said that although he was frightened by the call, he could still be a fair and impartial juror. The alternate juror knew only that the other juror had received some kind of threat. He did not learn the details of the call. He said he could still be a fair and impartial juror. Following the report of and inquiry into this incident, the court ordered the jury sequestered.
The motion for a mistrial was addressed to the sound discretion of the court and we are unable to conclude that the court's response to the incident was an abuse of discretion.

E.
Appellant contends that the court erred in denying his post-trial motion for *942 interviews of all the jurors based on his suggestion of jury misconduct. The motion, supported by the affidavit of Nira Gail Odom, appellant's wife, was filed after the motion for new trial had already been heard and the notice of appeal filed. Nevertheless, the court made inquiry into the possibility that jurors had disregarded the court's instructions and had been influenced by improper considerations. Mrs. Odom's affidavit declared that she learned of the jury misconduct from a juror, the same juror who received the threatening telephone call. The judge called in the juror, who disputed the factual assertions of Mrs. Odom's affidavit. Then the court denied the appellant's request for interviews with the other jurors.
The court evaluated the conflicting evidence and determined that there was no basis for further inquiry. The motion was a matter for the sound discretion of the court and we see no basis for finding an abuse of that discretion. See also, Lamb v. State, 90 Fla. 844, 107 So. 530 (1925); Yates v. State, 26 Fla. 484, 7 So. 880 (1890).

III. SENTENCE
We come now to the question of sentencing. The trial judge found two aggravating circumstances  that in committing the capital felony the appellant had created a great risk of death to many persons, section 921.141(5)(c), Florida Statutes (1975), and that the murder was especially heinous, atrocious, or cruel. Id. § 921.141(5)(h).
The court based the finding of great risk of death to many persons on the fact that two women were present in the victim's bedroom at the time of the shooting. The presence of two persons in immediate proximity to the victim of a murder by shooting is, as a matter of law, insufficient to establish this aggravating circumstance. Williams v. State, 386 So.2d 538 (Fla. 1980); Lewis v. State, 377 So.2d 640 (Fla. 1979); Kampff v. State, 371 So.2d 1007 (Fla. 1979). Therefore this finding is erroneous.
The trial judge based his finding that the murder was especially heinous, atrocious, or cruel on the fact that the killing was accomplished through a "vicious onslaught" which shattered the victim's skull. An instantaneous death caused by gunfire, however, is not ordinarily a heinous killing. Lewis v. State, 377 So.2d 640 (Fla. 1979); Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). This finding too was erroneous.
The trial judge's written sentencing findings state that he considered appellant's prior record, including numerous arrests and charges which did not culminate in criminal convictions. This court has held that aggravating considerations must be limited to those provided for by the statute, and information must relate to one of the statutory aggravating circumstances in order to be considered in aggravation. Evidence of past criminality, offered by the state for the purpose of aggravating the crime, is inadmissible unless it tends to establish one of the aggravating circumstances listed in section 921.-141(5). Therefore, consideration of mere arrests and accusations as aggravating circumstances is precluded. Perry v. State, 395 So.2d 170 (Fla. 1980); Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
The jury recommended a sentence of life imprisonment. Because it represents the judgment of the community as to whether the death penalty is appropriate, the jury's recommendation is entitled to great weight. For the court to overrule the recommendation of the jury, the facts justifying the death sentence must be so clear that the jury can be said to have acted unreasonably. Neary v. State, 384 So.2d 881 (Fla. 1980); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Tedder v. State, 322 So.2d 908 (Fla. 1975).
Improper factors were relied upon to aggravate the crime, and no statutory aggravating circumstances were established. The jury recommended life. We therefore vacate the sentence of death and order that *943 appellant be sentenced to life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON and ENGLAND, JJ., concur.
ADKINS, J., concurs as to conviction, and dissents as to sentence.