422 So.2d 816 (1982)
James Douglas HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 60144.
Supreme Court of Florida.
July 15, 1982.
Rehearing Denied October 5, 1982.
*817 Ronald W. Young, Tampa, for appellant.
Jim Smith, Atty. Gen., and Michael A. Palecki, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
This is a direct appeal from appellant's conviction of first-degree murder and, in accordance with the jury's recommendation, a sentence of death. See art. V, § 3(b)(1), Fla. Const. We affirm, holding that the dictates of State v. Sarmiento, 397 So.2d 643 (Fla. 1981), do not preclude the admission into evidence of appellant's confession made to an informant in appellant's backyard and recorded by police with electronic surveillance equipment.
The facts show that on June 25, 1980, authorities retrieved the dead body of twelve-year-old Rosa Lee Parker from an area known as the "Pits" in Hillsborough County. The body lay partially exposed in a shallow grave, covered with mud and hyacinths, and was clothed only in a brassiere pulled up over the breasts. The medical examiner determined the cause of death to be mechanical asphyxiation. The state charged twenty-two-year-old appellant with first-degree murder.
The testimony at trial revealed that on the afternoon of June 23, the victim, appellant, young Tina and Tammy Deal, and Russell Jackson went skating. Afterwards, they returned to the Deals' home. Later in the evening, Rosa Lee asked Tammy Deal to accompany her to a nearby schoolyard to play, but Tammy's mother would not permit it. Rosa Lee then left alone, headed toward the school. This was the last time anyone saw Rosa Lee alive.
Russell Jackson testified that on the same evening appellant asked him if he wanted to help rape Rosa Lee, and, if he did, appellant would take her somewhere afterwards and "get rid of her." Another of appellant's friends, Daniel Munson, testified that, early in the evening of the murder, appellant came to his house on his motorcycle, accompanied by a female whom Munson could not identify. Munson would not let appellant enter his home, and appellant and the female departed. Munson further testified that appellant returned to his home alone about midnight, said that "he had the nerve to hurt someone," and took Munson to see Rosa Lee Parker's dead body. While viewing the body, appellant boasted, "She wouldn't give it up, so I had to take it."
In the initial investigation, Munson related this information to the police. They persuaded him to go to appellant's home wired with electronic surveillance equipment for the purpose of eliciting incriminating statements from appellant. Munson agreed to do so after authorities promised to drop a pending burglary charge against him, drop pending parole violation charges, and not to charge him with accessory after the fact for the instant murder. Munson went to appellant's home, persuaded appellant admitted committing the murder. Munson testified concerning those statements at trial and the state introduced, over objection, both the police recording of the conversation and the testimony of the officers who overheard the conversation by way of the surveillance equipment.
The jury recommended death and the trial judge imposed a death sentence. The court found two aggravating factors, (1) that the murder was heinous, atrocious, and cruel, and (2) that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, and one mitigating factor, that appellant had no significant criminal history.

Trial Phase
Appellant raises three points dealing with the trial phase: (1) The tape recording and the officers' testimony of appellant's statements *818 were obtained in violation of this Court's decision in State v. Sarmiento, 397 So.2d 643 (Fla. 1981); (2) because Munson was acting pursuant to police instructions, he was an arm of the police department, and the statements he obtained were a violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (3) there was not sufficient evidence as a matter of law to prove premeditation.
Appellant first argues that the trial court committed reversible error in not suppressing the officers' testimony and the tape-recorded conversation between Munson and appellant. In State v. Sarmiento, we held that "the warrantless, electronic interception by state agents of a conversation between defendant and an undercover police officer in defendant's home [was] an unreasonable interception of defendant's private communications in violation of article I, section 12, Florida Constitution." 397 So.2d at 644. We based our decision on the principle that one enjoys a reasonable expectation of privacy in one's own home and that it is unreasonable to expect that others not privy to an in-home conversation will be listening in through electronic surveilling equipment. We concluded in Sarmiento that the tape recording and the testimony of officers listening to the surveilling devices were not admissible against the homeowner.
The instant case is, however, distinguishable from Sarmiento because the instant tape recording was of a conversation which occurred in appellant's backyard, not in the home. We refuse to extend the reasoning in Sarmiento and the protections of article I, section 12, beyond the four walls of the home. We note Odom v. State, 403 So.2d 936 (Fla. 1981), is also distinguishable from our holding in the instant case because that interception was in the home.
Because of mischaracterizations of our opinion in Sarmiento, we also feel that it is necessary to emphasize two points. First, Sarmiento does not prohibit an undercover officer or any other person who is privy to an in-home conversation from testifying about statements made therein. Second, the opinion does not prohibit the use of electronic surveilling devices by undercover officers in the home as long as a warrant has issued by the appropriate judicial officer.
Appellant's second contention is that, because Munson was acting under police instruction, appellant's statement made to Munson must be suppressed because the dictates of Miranda v. Arizona were not satisfied. This argument is without merit. Miranda only applies to instances of custodial interrogation; appellant was not in custody, nor was his freedom of movement restricted in any manner. See United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
In a third point, appellant argues that there was insufficient evidence, as a matter of law, to prove premeditation. At appellant's trial, the state proved premeditation through the testimony of two witnesses. Russell Jackson testified that appellant asked him to come and help rape the victim and that, if he did, appellant would later "get rid of her." Munson testified that appellant told him why he raped and murdered the victim: "She wouldn't give it up so I had to take it." We are satisfied that the evidence presented at trial is sufficient to support appellant's guilt of first-degree premeditated murder beyond a reasonable doubt. Phippen v. State, 389 So.2d 991 (Fla. 1980); Spinkellink v. State, 313 So.2d 666 (Fla. 1975).

Sentencing Phase
Appellant contends that the trial court, in the penalty phase, improperly doubled up aggravating circumstances, making the death penalty inappropriate. The trial court found two aggravating factors: The murder was heinous, atrocious, and cruel, and the murder was committed in a cold, calculated, and premeditated fashion without any pretense of legal or moral justification. Appellant asserts that the trial court based its findings as to both factors on the *819 same evidence and did not distinguish the two. This, appellant claims, was improper. We find that, although the trial court considered both aggravating factors together, the trial court's findings contained distinct proof as to each factor. The record shows that appellant committed the rape and murder in such a fashion as to make it especially heinous, atrocious, and cruel. Further, the record shows that appellant's state of mind was such that he intended to rape and then murder the victim and that he made this decision substantially before the time that he picked her up. We conclude that this supports the finding that the murder was committed in a cold and calculated manner without pretense of moral or legal justification. The sentence of death was proper. See Buford v. State, 403 So.2d 943 (Fla. 1981); LeDuc v. State, 365 So.2d 149 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 714 (1979); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
Accordingly, finding no reversible error, appellant's conviction and sentence of death are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and EHRLICH, JJ., concur.
McDONALD, J., dissents with an opinion, in which SUNDBERG, J., concurs as to part I only.
SUNDBERG, J., dissents.
McDONALD, Justice, dissenting.

I.
It was reversible error to allow the introduction of the tapes of conversation between Munson and Hill. A comparable factual circumstance existed in Odom v. State, 403 So.2d 936 (Fla. 1981). There, one Gerald Jones, in cooperation with the police, wore a hidden transmitter and engaged Odom in a conversation in his home in which he made incriminating statements which the police recorded. We held that the admission of the tape into evidence was error under the constitutional rule excluding evidence obtained in violation of article I, section 12 of the Florida Constitution. When Munson agreed to elicit information from Hill in consideration for the state's dismissing charges against him, he became an agent of the state. He allowed a body bug to be planted on him and surreptitiously recorded the private conversation during which he caused Hill to discuss the homicide. This was an unreasonable interception of a private conversation and as such was proscribed by article I, section 12 of the Florida Constitution.
Had Hill been indicted at the time the conversations took place, all evidence of the conversation would be excluded because there would have been a sixth amendment violation. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). See also United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). While that factor does not exist here, and we are not considering a sixth amendment violation, the language of Massiah and Henry suggests that courts should look with a critical eye at statements deliberately elicited by prosecutorial authority. See Malone v. State, 390 So.2d 338 (Fla. 1980). Because of that fact I would be inclined to raise the entire conversation to a violation of article I, section 12, but I will resist that temptation and restrict the application to the unreasonable interception.
In Odom we held the error harmless because the tape was merely cumulative. We can't say that the admission of the tape here was harmless. It played a significant role in the trial and was frequently discussed by witnesses and the prosecutor. Information gained from it was used in rebuttal.
This case should be remanded for a new trial.

II.
I also dissent from the imposition of the death penalty in this case. That sentence was predicated upon a finding that the crime was heinous, atrocious, and cruel and *820 that the murder was committed in a cold, calculated, and premeditated fashion without any pretense of legal or moral justification. I disagree that either of these elements was proved beyond a reasonable doubt. I will concede that an inference of each exists, but aggravating factors must be proved beyond a reasonable doubt and that degree of proof is not met here. Since there is one mitigating factor and the proof of aggravation is insufficient, only a life sentence should be imposed should this conviction stand.
SUNDBERG, J., concurs as to part I only.