466 So.2d 1167 (1985)
DEL MONTE BANANA Company and Federal Transport, Inc., Appellants,
v.
Jonathan Chacon, Appellee.
No. 83-2429.
District Court of Appeal of Florida, Third District.
April 2, 1985.
*1169 Fowler, White, Burnett, Hurley, Banick & Strickroot and William C. Norwood and Brett A. Rivkind, Miami, for appellants.
Horton, Perse & Ginsberg and Arnold Ginsberg; Huggett & Martucci, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
The defendants appeal a final judgment entered against them on a jury verdict for compensatory damages and maintenance and cure. We reverse.
The plaintiff brought this action against the defendants for physical and mental injuries he received from an accident which allegedly occurred while he was working on the defendants' ship. At trial, the plaintiff presented evidence and testimony which indicated that he was injured on the ship when a mate kicked a snagged line which recoiled and struck the plaintiff in the face. The plaintiff also presented expert *1170 testimony to establish the nature and extent of the injuries sustained, to wit: brain damage, blindness in one eye, memory loss, loss of I.Q. points, partial loss of hearing and psychiatric overlay manifesting impotence, childlike behavior, violent outbursts and personality change.
The defendants contested the existence of both the accident and the injuries. The defense presented evidence and testimony which indicated that the alleged accident on board the ship never, in fact, occurred. Expert testimony was also presented to establish that the plaintiff was lying about or exaggerating his alleged injuries.
At the conclusion of the trial, the jury returned a verdict for the plaintiff of $2 million in compensatory damages and $100,000 for maintenance and cure. Judgment was entered on the verdict. Following the denial of post-trial motions, this appeal ensued.
The defendants admit that there was conflicting and, thus, sufficient evidence to support the jury verdict finding them liable. They contend, however, that a number of improprieties on the part of the plaintiff's counsel during the trial deprived them of a fair and impartial jury. We will discuss the factual circumstances surrounding these alleged improprieties in the order they were presented on appeal.

The Rule Violation
At the outset of the trial, the rule was invoked requiring the sequestration of the witnesses.[1] The purpose of invoking the rule is to avoid the coloring of a witness's testimony by that which he has heard from other witnesses who have preceded him on the stand. Randolph v. State, 463 So.2d 186 (Fla. 1984) (rehearing denied Feb. 26, 1985); Spencer v. State, 133 So.2d 729 (Fla. 1961); cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962), cert. denied, 372 U.S. 904, 83 S.Ct. 742, 9 L.Ed.2d 730 (1963). Accord Odom v. State, 403 So.2d 936 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Dardashti v. Singer, 407 So.2d 1098 (Fla. 4th DCA 1982); Ali v. State, 352 So.2d 546 (Fla. 3d DCA 1977). Captain Ramirez, the captain of the ship on which the plaintiff was allegedly injured, was one of the defendants' key witnesses. He testified for the defense that the alleged accident never occurred. At apparently more than one point during the trial, a woman who was sitting in the courtroom as a spectator left the courtroom, sat down next to Captain Ramirez and they conversed.
This possible violation of the court's rule, observed by plaintiff's counsel, was not brought immediately to the attention of the trial judge. Instead, plaintiff's counsel, assuming a violation of the rule had occurred, attempted to impeach the credibility of Captain Ramirez on cross-examination in front of the jury by insinuating that the captain had violated the rule:
Q. Who is this woman?
A. She is a friend of mine.
Q. She is the one that has been coming into the courtroom and going out and telling you what's going on.
... .
Q. She is the one that's been coming into the courtroom and observing the other testimony and then coming out and sitting by you and describing all the little things that's going on.
A. No sir.
This was obviously an attempt by plaintiff's counsel to impress on the jury that the defendants' key witness was violating the court's rule and had probably altered his testimony in accordance with what he *1171 had learned of the other witnesses' testimony. Defense counsel's timely objection to these insinuations was overruled.
Although a party is given wide latitude in attacking the credibility of the opposing party's witnesses, we find that the cross-examination concerning the alleged rule violation in the present case was improper without a preliminary determination by the trial judge that the rule had in fact been violated. The circumstances of the present case certainly do not present an indisputable violation of the rule. Captain Ramirez's woman friend was not a witness in the case and had every right to be present in the courtroom during the trial. The mere fact that she left the courtroom on a number of occasions and was seen conversing with the captain does not necessarily indicate they were speaking of the trial or that the rule was violated.
To permit an attorney to proceed as plaintiff's counsel did in the present case is to allow the attorney to usurp the function of the trial court in two respects. First, the attorney is making the determination that the court's rule has been violated. Second, the attorney is deciding the appropriate remedy for the assumed violation.
The devastating impact that insinuations of this nature can have on the jury's perception of the credibility of a witness requires that the trial judge be given the opportunity to first determine if a violation of the rule has, in fact, occurred. When a party's counsel suspects a witness has violated the rule, he should bring this to the immediate attention of the trial judge and opposing counsel. The judge should then make a determination, outside the presence of the jury, of whether, in fact, its rule has been violated. Depending upon the circumstances of the alleged violation, this can be done at sidebar, or if the trial judge finds it necessary, the jury can be removed and a short informal hearing on the matter can be held.[2]See, e.g., Atkinson v. State, 317 So.2d 807 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 21 (Fla. 1976).
If the judge is satisfied that no violation has occurred, the trial should proceed with no further mention of the matter. If, on the other hand, the trial judge finds the rule has been violated, it is within his sound judicial discretion to determine how to remedy the violation. Odom, 403 So.2d at 941; Rollins v. State, 256 So.2d 541 (Fla. 4th DCA 1972). See also Romano v. Palazzo, 83 Fla. 243, 91 So. 115 (1922). The remedy can range from not permitting the witness to testify at all to allowing cross-examination on the matter as bearing on the witness's credibility. But see Steinhorst v. State, 412 So.2d 332, 336-37 (Fla. 1982) (indicating that a witness should be excluded from testifying because of a rule violation only in exceptional circumstances); Dumas v. State, 350 So.2d 464 (Fla. 1977) (same); Atkinson (same). If an attorney begins cross-examination on the issue without following this procedure, the trial court, on motion, should strike the testimony and instruct the jury to disregard it.
In the present case, the captain's credibility was crucial to the defendants' case. We find that because plaintiff's counsel's insinuations, in all likelihood, had a great impact on the jury's perception of that credibility, and the trial court was not given the opportunity to determine whether those insinuations had any bases in fact,[3] the defendants were denied a fair trial.
*1172 Under the circumstances of the present case, plaintiff's counsel's cross-examination on the alleged rule violation without trial court approval requires reversal and a new trial. While the foregoing dictates reversal, a new trial is also mandated by another instance of improper cross-examination of the captain as well as the cumulative impact on the jury of the incidents described herein.[4]

The Firing and Hiring of Captain Ramirez
The defendants objected without success to a line of cross-examination of Captain Ramirez concerning his allegedly being fired after the accident and then being rehired by the defendants just prior to trial. The objected-to line of questioning began as follows:
Q. Now, captain, isn't it true, ... the very day that you got back to Barrios that you were fired for having [the plaintiff] injured?
... .
[A.] I wasn't fired.
The next ten pages of the transcript reveal that the captain was relieved of his command following the alleged accident and worked for other companies over the next year, not for the defendant Del Monte. Approximately one month prior to the original trial date in this cause, Del Monte offered the captain a job which he accepted. The trial date was then continued for another year. After a few months the captain left the employ of Del Monte again. A few months before the new trial date, the captain was again hired by Del Monte, this time as a chief mate, with a promise that as soon as there was an opening he would be promoted to the position of captain again.
The defendants objected to this whole line of questioning and, at sidebar, moved for a mistrial or in the alternative that the court strike the testimony and accordingly instruct the jury. The most specific objection went to the original question concerning the captain being "fired for having [the plaintiff] injured". The defendants argued there was no direct proof supporting such an allegation and, therefore, the question was improper. Plaintiff's counsel countered by arguing that the questions and testimony were proper to show the captain's bias and interest in the outcome of the lawsuit. The trial court denied both the motion for mistrial and the motion to strike.
The question concerning the captain being "fired for having [the plaintiff] injured" must be discussed separately from the remainder of the objected-to cross-examination. It is axiomatic that counsel cannot ask questions of a witness that have no basis in fact and are merely intended to insinuate the existence of facts to a jury.
Counsel has no right to introduce arguments that are not supported by the evidence produced on the trial. The rights of parties are to be determined from the evidence. If he can be permitted to make assertions of facts, or insinuations of the existence of facts, not supported by the proof, there is danger that the jury will lose sight of the issue or be influenced by misstatements to the prejudice of the other party. [citation omitted]
Watkins v. Sims, 81 Fla. 730, 88 So. 764, 767 (1921). See also Bennett v. State, 316 So.2d 41 (Fla. 1975) (during the course of interrogation, questions should be propounded to prove facts by direct testimony emanating from the witness rather than by insinuations or innuendoes suggested by the interrogator); Smith v. State, 414 So.2d 7 (Fla. 3d DCA 1982) (questions insinuating impeaching facts which are not *1173 proved or are nonexistent are impermissible). In the present case, the only fact relevant here that was established on cross-examination was that the captain left the employ of the defendant after the alleged accident occurred. Moving from this fact to the allegation that the captain was "fired for having [the plaintiff] injured" is stretching an inference beyond reasonableness. Accordingly, the objection to the question should have been sustained, the question should have been struck, and the jury should have been instructed thereon as the defendants had requested.[5]
We now turn to the remainder of the cross-examination dealing with the rehiring of the captain prior to trial. It is well settled that counsel is given wide latitude in cross-examining an opposing party's witness to show that witness's interest, inclination, bias or prejudice. See Pittman v. State, 51 Fla. 94, 41 So. 385, 394 (1906); Hair v. State, 428 So.2d 760 (Fla. 3d DCA 1983); Alvarez v. Mauney, 175 So.2d 57 (Fla. 2d DCA 1965); § 90.608(1)(b), Fla. Stat. (1983); 24 Fla.Jur.2d Evidence and Witnesses § 602 (1981). It is within the reasonable discretion of the trial court to determine to what length it will go in permitting cross-examination of a witness to show his interest, bias or prejudice. Alvarez; H.I. Holding Co. v. Dade County, 129 So.2d 693 (Fla. 3d DCA), cert. denied, 133 So.2d 646 (Fla. 1961). In the present case, the trial court did not commit error by allowing plaintiff's counsel to cross-examine the captain on his being hired by the defendant Del Monte prior to trial and the promised promotion in the near future. These facts reflected the captain's potential interest and bias as well as his party alignment and were properly considered by the jury. See Biscayne Boulevard Properties, Inc. v. Graham, 65 So.2d 858 (Fla. 1953).

Communication with the Jury
During the course of the trial, plaintiff's counsel, on cross-examination, elicited statements from two of the defendants' expert witnesses indicating that they did not know whether or not the plaintiff had brain damage. Immediately after these statements were made, plaintiff's counsel wrote "don't know" on a blackboard. A third expert witness for the defendants testified that, in his opinion, the plaintiff had suffered no hearing loss. On cross-examination, the expert indicated that he did not know whether brain damage could have affected the test he had utilized.
After this witness left the stand, the defendants' counsel and one of plaintiff's co-counsel went into a conference with the trial judge at sidebar. During this conference, plaintiff's other co-counsel went to the blackboard and wrote a third "don't know" on it. The defendants moved for a mistrial which was denied. The defendants contend that this conduct amounted to an unauthorized communication with the jury outside the presence of the court and opposing counsel and that a new trial should have been granted on this basis alone. We disagree.
We assume for purposes of decision that it was improper for plaintiff's counsel to write "don't know" on the blackboard. As with any improper comment or remark of counsel to the jury, however, this communication would not be a valid basis for a new trial unless it was highly prejudicial or inflammatory in nature. See State Farm Mutual Automobile Insurance Co. v. Guthrie, 321 So.2d 116 (Fla. 3d DCA 1975); Tate v. Gray, 292 So.2d 618 (Fla. 2d DCA 1974); Dixie-Bell Oil Co. v. Gold, 275 So.2d 19 (Fla. 3d DCA 1973). *1174 Since there is no appearance of prejudice or improper motive in the writing of "don't know" on the blackboard, the trial court did not err in concluding that the communication did not form a basis for a new trial. See generally 38 Fla.Jur.2d New Trial § 24 (1982); 66 C.J.S. New Trial § 49 (1950). Cf. Rudolph v. Gleason, 339 So.2d 298 (Fla. 3d DCA 1976) (plaintiff's motion for new trial properly denied where defendant's conversation with juror merely concerned juror's reluctance to state her age on voir dire examination), cert. denied, 348 So.2d 952 (Fla. 1977).

The Dagger Demonstration
At the close of the defendants' case, plaintiff's counsel called the plaintiff as a rebuttal witness. Once on the stand, counsel had the plaintiff place his hand over his "good eye." Counsel then asked the plaintiff whether he could see any light, to which the plaintiff replied in the negative. At this time, counsel made several striking motions with a dagger to the plaintiff's "bad eye" to demonstrate to the jury that the plaintiff truely was blind in that eye because he did not blink.
The defendants moved for a mistrial on two grounds. First, they argued that the testimony was merely cumulative and should not have been allowed on rebuttal. Further, the defendants argued that the dagger demonstration was a theatrical display which obviously prejudiced the jury so that it could no longer view the evidence fairly. The trial court denied the motion.
On appeal, the defendants make the same arguments to this court. There is no merit to the defendants' first ground for a new trial that the testimony was cumulative in nature. Assuming arguendo that the plaintiff's testimony that he was blind in one eye was cumulative rather than rebuttal, it was within the sound discretion of the trial court to allow its admission, and the exercise of this discretion will not be disturbed on appeal unless it appears to so prejudice the result as to indicate an abuse of discretion. Jacksonville, T. & K.W. Ry. v. Wellman, 26 Fla. 344, 7 So. 845 (1890); Fern v. Krantz, 351 So.2d 1144 (Fla. 3d DCA 1977); Driscoll v. Morris, 114 So.2d 314 (Fla. 3d DCA 1959). We cannot say that the admission of the testimony was so prejudicial as to constitute an abuse of discretion.
The theatrical nature of the dagger demonstration, however, presents a closer case. Although the decision of whether to permit an exhibition or demonstration of injuries in front of a jury is generally a matter resting in the discretion of the trial court, such exhibitions are generally frowned upon. Florida Motor Lines v. Bradley, 121 Fla. 591, 164 So. 360 (1935). See Hehir v. Bowers, 85 Ill. App.3d 625, 40 Ill.Dec. 918, 407 N.E.2d 149 (1980). See generally 32 C.J.S. Evidence § 610 (1964); Annot., 66 A.L.R.2d 1334 (1959); Annot., 66 A.L.R.2d 1382 (1959). Demonstrations of injuries are especially suspect where the injuries are of such a nature that they cannot be seen by the jury, Landro v. Great Northern Ry., 117 Minn. 306, 135 N.W. 991 (1912), or can be easily faked.[6] *1175 Ruspantini v. Steffek, 350 Ill. App. 319, 113 N.E.2d 74 (Ct.App. 1955); Felsch v. Babb, 72 Neb. 736, 101 N.W. 1011 (1904); Clark v. Brooklyn Heights R. Co., 177 N.Y. 359, 69 N.E. 647 (1904). See generally McCormack on Evidence § 215 (E. Cleary 3d ed. 1984). Any exhibition of injuries which is intended to excite sympathy or pity in the jury or which inflames or prejudices the jury is obviously grounds for a new trial. See 32 C.J.S. Evidence § 610 (1964) and cases cited.
In the present case, we must accord great weight to the findings of the trial judge on this matter since he was in a superior vantage point to determine any prejudicial effect the demonstration might have had on the jury. In this regard, the trial judge found:
defendant's [sic] allegations of "inflammatory theatrics" are either exaggerated or inaccurate; further, the conduct complained of did not materially affect the outcome of the trial.
3. This Court further finds as a matter of fact that the referenced "knife demonstration" was neither outrageous nor inflammatory.
According great weight to this finding, we cannot say that the trial court clearly abused its discretion in permitting the demonstration. Florida Motor Lines. Since this case is being reversed for a new trial, however, we caution the trial court on retrial to exercise its discretion wisely in determining if such a demonstration is of any aid to the jury. See Felsch; Clark.

Cumulative Error
Although the points raised herein may present close questions on each individual issue, we find that the cumulative impact of plaintiff's counsel's complained-of actions at trial clearly mandates reversal in this cause. As Judge Tillman Pearson pointed out in his concurring opinion in Sharp v. Lewis, 367 So.2d 714, 715-16 (Fla. 3d DCA 1979):
[t]here are ... at least two sub-categories of error arising under the cumulative error heading . .. which may be referred to as: (a) "shot gun" cumulative, reversible error and (b) "machine gun" cumulative, reversible error. The first of these, "shot gun" error, is simply a series of errors that may be of various types or concern various aspects of the trial, but which (for the most part) take place within a short period of time and which, like the simultaneously-fired pellets from a shot gun, cause their damage not necessarily from the effect of any one pellet but from the combined effect of all the pellets over one specific area of the target... . The second sub-category, "machine gun" error, is simply a series of errors that may well have taken place over a long period of time but which, when viewed from afar, vis-a-vis one another, provide a picture or design, much like the perforated design of the bullets of a machine gun on its target... . In this regard, reversible error may arise where the objectionable comments, though dispersed throughout a long trial, are so strategically placed that their cumulative effect upon the jury can be seen from a reading of the entire record. [citations omitted] [footnotes omitted]
We find that the complained-of acts of plaintiff's counsel in the present case were "so strategically placed that their cumulative effect upon the jury can be seen from a reading of the entire record" and, thus, "machine gun" cumulative error exists requiring reversal.
Accordingly, the judgment under review is reversed and the cause remanded for a new trial.
NOTES
[1] The "rule" concerning sequestering of witnesses that we are discussing should be distinguished from rules of procedure adopted by the supreme court. Cf. Fla.R.Civ.P. 1.280(c)(5) (concerning protective orders requiring that discovery be conducted with no one present except those designated by the court). It is generally held that the decision of whether to exclude a witness from the courtroom remains within the province of the trial judge's discretion, although this discretion has been severely restricted. See Dardashti v. Singer, 407 So.2d 1098 (Fla. 4th DCA 1982). Surprisingly, the "rule" has never been crystallized in Florida as it has been under Federal Rule of Evidence 615 which has made the exclusion mandatory upon request. Id.
[2] Proffers by counsel may be all that is necessary to enable the court to perform its function. The matter should be disposed of as expeditiously and informally as possible as long as the alleged offending party is fairly apprised of the claimed violation and given a chance to respond.
[3] Although the trial court was aware that the woman had been coming and going from the courtroom, the defendants were not given an opportunity to show that no rule violation had occurred. The rule only prohibits witnesses from discussing testimony given or overheard in the case. If given the opportunity, the defendants may have been able to convince the judge that any conversation between the woman and the captain pertained to some innocuous matter and had nothing to do with the trial. In such a case, the cross-examination would not have been permitted and the jury would not have been improperly prejudiced. See Atkinson, 317 So.2d at 808 (The rule's requirements do not "prohibit absolutely all conversation between or among prospective witnesses. It is only conversation relating to the facts of the case which is proscribed."). Accordingly, the defendants' objection to this cross-examination was improperly overruled.
[4] Because we are reversing for a new trial, we do not discuss the points raised by the defendants concerning the damages that were awarded.
[5] We note that the question may have been improper on other grounds as well. For instance, it is arguable that the question was improper because it dealt with a "subsequent remedial measure." See § 90.407, Fla. Stat. (1983). Some courts have held that evidence that an employee involved in an accident was later discharged is inadmissible to prove antecedent negligence. See Anot., 170 A.L.R. 7, 8 n. 1 (1947) and cases cited. See generally Reinhart v. Seaboard Coast Line R.R., 422 So.2d 41 (Fla. 2d DCA 1982), review denied, 431 So.2d 988 (Fla.), review denied, 431 So.2d 989 (Fla. 1983); § 90.407; 38 Fla.Jur.2d Negligence § 113 (1982). Since this ground was not raised before the trial court or this court, however, we need not decide the issue.
[6] Inherent in the general rule that the trial judge has discretion over whether to allow a demonstration of injury, is the supposition that the judge has prior knowledge of what the demonstration will consist of; thus, allowing the judge to assess its authenticity and reliability. The defendants complain that plaintiff's counsel did not first proffer what was about to be demonstrated. It is apparent from reading the record, however, that the defendants' attorney anticipated the demonstration, but complained to the trial judge only of its cumulative nature.

[Defendants' Attorney]: Your Honor, I see what is coming and I object, and this is cumulative and it should be so reflected and it is not rebuttal of anything. And I am moving for a mistrial if he attempts to make this demonstration.
THE COURT: Let's have argument sidebar.
... .
[At sidebar]
[Defendants' Attorney]: [Y]ou are asking for a demonstration of the witness, and this is obviously testimony that should be demonstrated, should have been put on in direct and has nothing to do with rebuttal.
THE COURT: What way is that prejudicing the jury .. .?
[Defendants' Attorney]: Because of the fact that it gives him the last opportunity to present evidence before a jury under the sham of it being rebuttal.
... .
THE COURT: Overrule your objection.
Thus, although given the opportunity, the defendants' counsel did not argue as to the demonstration's unreliability. Even after the demonstration was completed, the objection and motion for mistrial went only to the cumulative and theatrical nature of the demonstration. We note that in the context in which the term theatrical was used, counsel was not asserting to the trial court that the plaintiff was feigning his response.