504 So.2d 407 (1987)
STATE of Florida, Appellant,
v.
James Douglas HILL, Appellee.
No. 86-235.
District Court of Appeal of Florida, Second District.
January 7, 1987.
*408 Jim Smith, Atty. Gen., Tallahassee, and Theda R. James, Asst. Atty. Gen., Tampa, for appellant.
B.V. Dannheisser, III, Sarasota, for appellee.
PER CURIAM.
In 1980 James Hill was convicted of the murder of Rosa Lee Parker and sentenced to death. The supreme court initially affirmed both the conviction and the death sentence. Hill v. State, 422 So.2d 816 (Fla. 1982). Hill's conviction, however, was vacated after he successfully alleged in collateral proceedings that the trial court erroneously failed to conduct a hearing pertinent to his competency to stand trial. Hill v. State, 473 So.2d 1253 (Fla. 1985). His retrial is pending. The state now appeals an order suppressing two significant items of evidence: the use at retrial of evidence gained through the use of a "body bug" and the prior testimony of Daniel Munson.

The Body Bug Evidence:
Munson had at first been under suspicion for the murder of 12-year-old Rosa Lee Parks. He offered to wear a body bug and to cooperate with the police in exchange for the dismissal of extant felony and parole violation charges. Munson, wearing the body bug, talked with Hill. At the trial, presided over by Judge Harry Lee Coe, III, the state offered Munson's testimony containing the inculpatory statements made by Hill and tape recorded by police officers through the use of the body bug. Thus, Judge Coe admitted the recorded statements into evidence based upon Munson's testimony that the inculpatory statements occurred outside of Hill's home. Hill was convicted.
While Hill's appeal was before the supreme court in 1985, Munson provided an affidavit to an investigator in Texas in which he recanted his testimony given at a previous suppression hearing and subsequent trial; he asserted that he had not freely consented to wearing the body bug. Instead, Munson stated in the affidavit that he had been coerced by the state's threats to send him back to prison. Munson also claimed that he had been coached by the prosecutors to say that the electronically recorded conversation had taken place outside the Hill home. Munson's affidavit further states that the incriminating statements expressed by Hill had occurred when they were inside Hill's home. Munson made similar recanting statements to Hill's investigator over the telephone which were also recorded.
*409 On remand, after a finding that he was competent to stand trial, Hill again moved to suppress the evidence obtained through Munson's body bug. Judge John P. Griffin, rather than Judge Coe, was now the trial judge. Using the testimony of Hill's investigator together with Munson's affidavit and the recorded conversation in which Munson recanted his prior testimony, Hill claimed the taped statements were illegally recorded for the reason that the evidence was obtained within the defendant's home and without an intercept warrant. Hill argued, therefore, that Munson's recantation of his testimony as to his consent to wear the body bug defeated the state's claim that this case was within the consent exception to a warrantless interception of an oral communication under section 934.03(2)(c), Florida Statutes (1979). Hill further contended that in any event the testimony must be suppressed because Munson now says that the conversation took place inside Hill's home. See State v. Sarmiento, 397 So.2d 643 (Fla. 1981).
Based on his reading of the trial testimony from the first trial and the testimony presented at the second suppression hearing, which did not include a direct or cross-examination of Munson, Judge Griffin found the evidence to be inconclusive; he therefore made no finding of fact on the issues of consent and whether the taped conversation took place inside or outside the defendant's home. Rather, he found that there was sufficient time for the police to obtain a search warrant and that they failed to do so. Observing that he should resolve any question of the validity of the electronic eavesdropping in favor of Hill, Judge Griffin granted his motion to suppress.
The state asserts that by granting Hill's motion to suppress, the judge impermissibly reassessed a predecessor judge's determination of Munson's credibility (in this case Judge Coe's ruling at the first supression hearing) without having heard Munson testify. State v. Garcia, 422 So.2d 926 (Fla.3d DCA 1982); Louis v. Blackburn, 630 F.2d 1105 (5th Cir.1980). We have no quarrel with the propositions set out in those cases; however, because of the peculiar posture of this case, it is our view they do not apply.
Ordinarily, there would be no reason for the court to consider a second motion to suppress on the same issues resolved by the prior hearing. Judge Coe had already evaluated Munson's credibility at the hearing on the first motion to suppress. We believe, however, that the allegations of Munson's recantation provided a sufficient basis for Judge Griffin to conduct a new suppression hearing. The question then is whether it was essential for Munson himself to give the recanting testimony. Admittedly, the evidence presented on Munson's recantation was hearsay. Therefore, it was inadmissible unless it could be considered as impeachment of Munson's prior testimony.
Use of inconsistent statements is a recognized method of impeaching a witness. § 90.608(1)(a), Fla. Stat. (1985). In most instances, the witness has made the inconsistent statement prior to the time he has testified. However, there are some circumstances in which subsequent inconsistent statements have been admitted for the purpose of impeachment. D. Binder, Hearsay Handbook § 2.13 (2d ed. 1983). In People v. Collup, 27 Cal.2d 829, 167 P.2d 714 (1946), the prosecution was permitted to introduce at a criminal trial the testimony of Marjorie Nelson who had testified at the defendant's preliminary hearing and who had now left the jurisdiction. Later in the trial, the defendant, Flaten, and her mother testified that Nelson had told them that she had not testified truthfully at the preliminary hearing. On motion of the prosecution, the court struck the testimony of Flaten and her mother, and the defendants were convicted. In reversing the judgments on appeal, the California Supreme Court held that the trial judge had erred in striking the testimony concerning the statements by Nelson which were inconsistent with the testimony she gave at the preliminary hearing. The court rejected the argument that the impeachment testimony could not be introduced because of the failure to lay a proper foundation by *410 first asking Nelson whether she had made such inconsistent statements. The court pointed out that due to Nelson's absence the defendants could not possibly meet the requirement of laying the proper foundation and held that in the interest of justice the impeaching evidence should have been admitted for what it was worth. Accord People v. Rosoto, 58 Cal.2d 304, 373 P.2d 867, 23 Cal. Rptr. 779 (1962), cert. denied, 372 U.S. 954, 83 S.Ct. 950, 9 L.Ed.2d 978 (1963).
Attacking the credibility of prior testimony which is being introduced at a later hearing by evidence of subsequent contradictory statements seems to have been contemplated by section 90.806(1), Florida Statutes (1985), which provides as follows:
When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for these purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time inconsistent with his hearsay statement is admissible, regardless of whether or not the declarant has been afforded an opportunity to deny or explain it.
C. Erhardt, Florida Evidence § 806.1 (2d ed. 1984) explains this provision as follows:
Differences in the methods of impeachment obviously arise when the person whose credibility is in issue has not appeared as a witness in the courtroom. A principal distinction between attacking the credibility of a hearsay declarant and the credibility of an actual witness is that an inconsistent statement of a courtroom witness is a prior statement, while an inconsistent statement of a hearsay declarant often will be a statement which was made after the hearsay statement. The absence of the declarant from the courtroom together with the fact that the inconsistent statement was made subsequent to the hearsay statement, practically precludes the opponent from calling an inconsistent statement to the attention of the hearsay declarant. Therefore, it would be impossible to comply with the Section 90.614 requirement that before extrinsic evidence of a prior consistent statement is admissible, the witness must be given the opportunity to admit, deny or explain making the statement.
Since Munson could not be located, his testimony given at the first hearing could only be introduced at the second hearing as an exception to the hearsay rule under section 90.804(2)(a), Florida Statutes (1985). Because Munson's testimony at the new hearing constituted a hearsay statement, evidence of his subsequent inconsistent statements was admissible regardless of whether he was afforded an opportunity to deny or explain it. Thus, Judge Griffin was then in a position to evaluate Munson's prior testimony and his subsequent inconsistent statements, giving such weight to his recantation as deemed appropriate in light of the fact that Munson did not personally appear at the second hearing.
It was at this point, however, that we believe the court erred. The court declined to rule on the critical issues of where the taped conversation took place and whether it transpired with Munson's consent. Instead, the court granted the motion to suppress because the state did not get an intercept warrant when it had time to do so. Yet, if the recorded conversation took place outside of the house with Munson's consent, there was no requirement for the police to get a warrant regardless of whether there was sufficient time to procure it. Consequently, the court based its ruling upon an erroneous premise.
We reverse and remand for a new suppression hearing on the issues of consent and the location of the taped conversation. Unless the intercept was made with Munson's consent and the conversation took place outside of the defendant's house, the tape must be suppressed and the listening officers cannot testify concerning what they heard. Since the intercept was made without a warrant, the state will have the burden of proof. Because Judge Griffin did not hear the testimony at the first hearing, evidence should be introduced by both sides as if this were an original hearing. *411 Neither party, of course, is required to introduce Munson's testimony, but as in any other hearing or trial, the prior testimony of any witness may be introduced if the requirements of section 90.804(2)(a) are satisfied. While this result places Judge Griffin in the position of basing his suppression decision at least partly on a credibility determination of Munson's conflicting statements, we believe our disposition achieves a just balance between Hill's constitutional rights and the state's opportunity to carry its burden of showing the lack of the need to obtain an intercept warrant in this case.

Munson's Former Testimony:
Munson was a crucial prosecution witness at the first trial; he testified that Hill had shown him Rosa Lee Parker's body and had boasted of killing the girl. According to the state, as is noted above, Munson is a fugitive from justice somewhere in Texas and it seems he cannot be produced for the second trial. In the in limine proceedings below Hill does not appear to have contested this claim of unavailability, pressing instead for the exclusion of Munson's former testimony on the following grounds. First, he presented evidence that Munson, in February, 1985, had recanted his trial testimony in a telephone call and subsequent affidavit furnished to a defense investigator. Second, Hill argued that the performance of defense counsel in the first trial had been ineffective, extending to his cross-examination of Munson. The trial court found that the evidence of Munson's recantation was "worthy of belief" and for that reason determined that the state could not introduce Munson's testimony from the first trial.
Rule 3.640(b) of the Florida Rules of Criminal Procedure permits the use of prior trial testimony if the witness is now mentally incompetent, dead, absent from the state, or physically unable to appear; the party seeking to introduce the former testimony must show due diligence in an effort to procure an absent witness's attendance, and the witness's absence must not be with the connivance or consent of that party. See also Putnal v. State, 56 Fla. 86, 47 So. 864 (1908). Munson's former testimony falls within the hearsay exception found in section 90.804(2)(a), Florida Statutes (1985), and possesses sufficient indicia of reliability to permit its use upon retrial. Richardson v. State, 247 So.2d 296 (Fla. 1971); Blackwell v. State, 79 Fla. 709, 86 So. 224 (1920). In determining whether prior testimony should be admitted, the credibility of that testimony is not an issue. Maugeri v. State, 460 So.2d 975 (Fla.3d DCA 1984); United States v. Atkins, 558 F.2d 133 (3rd Cir.1977), cert. denied, 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774 (1978); United States v. Brainard, 690 F.2d 1117 (4th Cir.1982), cert. denied, 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). The trial court's exclusion of Munson's former testimony on the ground that it considers such testimony unworthy of belief constitutes "a usurpation of the jury function." United States v. Katsougrakis, 715 F.2d 769 (2d Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).
Hill attempts before us to distinguish "reliability" from "credibility." It is true that the trial court's order does speak to the reliability of Munson's former testimony but we are persuaded that characterization of the recanting words as "worthy of belief" is inescapably more akin to a credibility resolution. This is not to say our holding renders irrelevant the testimony of Hill's investigator. The state concedes, upon the admission of Munson's former trial testimony, that Hill may introduce evidence of the post-trial recantation. § 90.806, Fla. Stat. (1985). Hill's jury would then have the responsibility of determining the ultimate weight to be given Munson's testimony.
Neither are we persuaded that the performance of Hill's first trial attorney should affect the admissibility of Munson's testimony given at that trial. It was not necessary for the supreme court in overturning Hill's conviction in collateral proceedings to determine the sufficiency of Hill's claim of ineffective counsel. Although the supreme court did state that "counsel's investigation and representation at trial leave a number of questions unanswered," 473 So.2d at 1259, it appears that concern was primarily with "a failure of trial counsel to understand the law and the *412 rules regarding the issue of competency to stand trial." Id. The court did identify several matters relied upon by Hill as proof of ineffectiveness; but, many of those items involving Munson, if true, appear to be provable with or without Munson's presence in the courtroom. The state has countered that, notwithstanding counsel's other possible shortcomings, the cross-examination of Munson was generally adequate. We cannot say otherwise from the record before us.
Judge Griffin is permitted to resolve credibility in the context of the body bug evidence because it is the court's responsibility to conduct a hearing outside the presence of the jury to determine whether the evidence gained in that manner may be constitutionally admitted. On the other hand, since the admissibility of Munson's prior testimony does not involve Fourth Amendment consideration the credibility determination in that instance must be made by the jury.
Based upon the foregoing, we vacate the trial court's supression order in its entirety, and direct that there be further proceedings consistent with this opinion.
DANAHY, C.J., and GRIMES and CAMPBELL, JJ., concur.