(No. 22679.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MARIA, Plaintiff in Error.

*Opinion filed February 15, 1935.*

GEORGE J. SPATTUZA, and FRANK DEBARTOLO, (W. G. ANDERSON, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and AMOS P. SCRUGGS, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

John Maria was convicted in the criminal court of Cook county of the crime of manslaughter under an indictment charging him with the murder of Joseph Baio. He brings the case here by writ of error and urges that the trial court erred in admitting in evidence a statement made by Baio before he died; that he could not be convicted of manslaughter under the evidence; that the court erred in admitting evidence of prior offenses; that the prosecuting attorney's remarks were highly prejudicial, and that the evidence does not support the verdict.

The defendant shot Joseph Baio about 7:45 o'clock on the evening of November 3, 1933, when he met him near

the intersection of Wallace and Twenty-ninth streets, in the city of Chicago. Baio was taken to St. Paul's Hospital, where he died about 11:00 o'clock of the same evening. The defendant fled and was not apprehended until he surrendered, two months later. There had been trouble between the defendant and the deceased for several months prior to this shooting. They were brothers-in-law, and it is shown that about April 30, before the fatal shooting, a fight had taken place between the defendant and his brother on one side and the deceased and his two sisters on the other. The deceased was stabbed in the neck with a butcher knife by the defendant, and the deceased's sister, Josephine Janelli, shot the defendant in the eye. The testimony shows that the defendant had made threats against the Baio family. In August of 1933 he returned to the place of the first encounter and seized Rose Maria, a sister of the deceased, and tried to shoot her, but she broke loose from him and took refuge in a neighbor's house. At that time he threatened to get revenge for the loss of his eye. About a week later he called on the telephone and repeated his threats of revenge. About four days before the shooting he sent his daughter over to his brother's house to get a gun.

Maria testified in his own behalf that he met Joseph Baio on the west side of Wallace street, near Twenty-ninth street; that Baio came across the street, cursed him, struck him and threatened to kill him; that he was afraid Baio would shoot him; that when Baio struck him he drew his revolver and fired five shots at Baio, and that he then fled from the scene of the shooting. The facts we have set out are sufficient to enable us to pass upon the assignment of error that the defendant could not, under the evidence, be found guilty of manslaughter. He urges that he was either guilty of murder or was justified in killing in self-defense. There was evidence that the killing was done in the heat of passion, so as to reduce the crime from murder to

manslaughter. The defendant testified that Baio hit him and then reached for his gun, whereupon the defendant shot Baio. This evidence would justify a verdict of manslaughter. (*People* v. *Beil*, 322 Ill. 434, 440.) The cases of *People* v. *Bradley*, 324 Ill. 294, *People* v. *Jarvis*, 306 id. 611, and *People* v. *Black*, 309 id. 354, relied upon by the defendant, involve instructions and are not in conflict with our conclusions here.

The contention is made that it was error to admit evidence of the trouble the defendant had had with the deceased and members of his family in April before the fatal shooting in November. They had a fight, in which the deceased was stabbed in the throat by the defendant and the defendant had been shot in the eye by the deceased's sister. The defendant had threatened "to have revenge on the house" where he lost his eye. He sent his daughter over to his brother's house to get his gun a few days before the shooting, in November. The testimony shows continuous trouble between the defendant and Baio prior to the fatal shooting. If the evidence offered has a tendency to prove the crime charged, it is competent even though it also proves a separate, distinct offense. The fact that a full inquiry into the crime discloses the commission of other crimes does not limit the scope of the investigation. *People* v. *Cummings*, 338 Ill. 636.

There is greater force in the defendant's contention that the court erred in admitting in evidence a statement purporting to be a dying declaration of Baio. After Baio was taken to the hospital he was placed on the operating table and later removed to a private room. About 8:00 o'clock the police officers arrived and sought to induce Baio to make a statement. Officer Trinka told Baio he might die and that they would like to get a statement from him. Baio refused and requested that his family doctor be called. A short while later officer Trinka persuaded him to make the statement in question. In it he said that the defendant

had shot him because Baio's sister had shot out the defendant's eye. The statement was dictated by the police officers and was in the language regularly used by them. It recited that Baio believed he was about to die and that he had no hope of recovery. It does not appear that any surgeon or other person qualified to give an opinion told Baio that he had a mortal wound. The surrounding circumstances indicate that he did not think he was going to die. At first he refused to make a statement and insisted that his doctor be called. At that time he refused to have a priest called. About an hour after he had made the statement he called for the priest. Although others present may have despaired of his life, the first realization of impending death on Baio's part shown by this record was when he called for the priest. The statement of the officer to Baio was that he "might die," or, as Dr. Arkelion related the conversation, "probably would die." The belief of the dying man and not the belief of those around him furnishes the guaranty of truthfulness that makes his dying declaration admissible in evidence. The rule is that such a declaration must be made under the fixed belief and moral conviction of the person making it that his death is impending and certain to follow almost immediately, without opportunity for repentance and in the absence of all hope of avoidance, when he has despaired of life and looks to death as at hand. (*People* v. *Cassesse,* 251 Ill. 422, 425; *People* v. *Hatcher,* 334 id. 526, 534.) The language used by the declarant or the acts performed, his evident danger, statements made to him by medical or other attendants, all must be weighed in order to prove that his statement is a dying declaration, and it must appear that all hope of recovery was gone. (*Westbrook* v. *People,* 126 Ill. 81, 90.) In the first instance the court must be satisfied, beyond a reasonable doubt, that the statement was made *in extremis,* and unless it was so made it should not be allowed to go to the jury. (*Starkey* v. *People,* 17 Ill. 17; *Westbrook* v.

*People,* 126 id. 81.) The facts surrounding the making of this statement fall so far short of the requirements that it should not have been admitted in evidence. Baio did not lose hope of recovery until about an hour after the statement was taken by the police. He was not in awe of his impending dissolution when it was made. The admission of this incompetent evidence was highly prejudicial.

Objection is also made to the remarks of the prosecutor in his closing argument. In substance they were that the defendant was an Italian, was not a citizen or tax-payer, and that he was putting the citizens of this State to great expense by reason of his trial. This argument was objected to, and the court told the jury that they had heard the evidence and should give it the weight they thought it should have. The prosecutor also talked about the shame of Chicago because of so many unpunished murders. He also said that the defendant's testimony that he did not strike back when the deceased struck him in one of their altercations was a "damned lie." In addition to these remarks, objection is made to the latitude allowed the State's attorney in the cross-examination of the defendant. We need not consider this, since the error caused by the inflammatory statements in counsel's argument is so grave as to require a reversal of this judgment. Without regard to the guilt or innocence of the accused, his trial must be conducted in conformity to law. There is no instrument that can be used to determine the effect of inflammatory remarks upon the minds of the jurors. If that effect could be determined, there is no eraser available to the trial court to remove it. The defendant was on trial for murder and was not being tried on account of his nationality or citizenship. The remarks complained of are so potent a force for evil that a conviction following them cannot be permitted to stand.

The defendant's contention that his conviction was not supported by the evidence is based upon the four assign-

ments we have considered. He says that, taken together, they raise a reasonable doubt of his guilt. Since the case must be reversed and the cause remanded for a new trial we need not consider this assignment of error.

*Reversed and remanded.*