[No. 17683-1-II.   Division Two.   November 2, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. IGNACIO AVENDANO-LOPEZ, *Appellant*.

*Patricia A. Pethick*, for appellant.
*John W. Ladenburg, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

WIGGINS, J. — A jury found Ignacio Avendano-Lopez guilty of possession of cocaine with intent to deliver. We hold that the prosecutor improperly asked Avendano-Lopez on cross-examination whether he had "on occasion sold heroin," and improperly concluded her cross-examination by asking Avendano-Lopez, "You are not legal in this country, are you?" Avendano-Lopez did not "open the door" to these questions by testifying that he had recently been released from jail, was born in Mexico, and was raised in Mexico and Texas. Nonetheless, holding that it is unlikely that the misconduct affected the verdict, we affirm.

### FACTS

On July 27, 1993, Tacoma Police Officers Palmer and Krause were conducting surveillance in an area of downtown Tacoma known for extremely high drug activity. Both officers testified that they observed two men walking north on Commerce Street. One of the men was Avendano-Lopez and the other was identified as Jesus Garcia Vargus. The officers saw Avendano-Lopez and Vargus separate; Avendano-Lopez stood near a bus stop on Com-

merce Street, and Vargus seated himself on the stairs leading to a business office. The officers observed another man, whom they knew to be a heroin user, approach Vargus.

Both officers stated that the known heroin user showed Vargus what appeared to be U.S. currency. Vargus then walked over to where Avendano-Lopez was standing. Avendano-Lopez removed an object from his mouth and handed it to Vargus. Avendano-Lopez then left the area, and Vargus remained near the bus stop. After a few moments, the known heroin user again contacted Vargus, who showed the heroin user something in his hand. The officers testified that the object was small and appeared to be dark in color. Vargus next put the object up to his mouth and appeared to make a tearing motion with his teeth. Vargus again displayed the object to the heroin user, who shook his head as if to say "no," and walked away. Later, the officers observed Vargus hand the object back to Avendano-Lopez, who then walked away. One officer approached Vargus and Avendano-Lopez as they were separating. The other officer saw Avendano-Lopez drop something from his left hand. This object was recovered by the officers and later tested positive for heroin. Both men were arrested.

During trial, Avendano-Lopez testified that he went to the bus stop, tried to find a friend to loan him money to ride the bus home, and was approached by Vargus. Avendano-Lopez stated that Vargus then left the bus stop area and that the police officers arrested him after he asked two individuals for a dollar for the bus. Avendano-Lopez denied that he had previously sold heroin, that he had ever given Vargus heroin to sell, and that he had thrown something to the ground before being arrested.

ANALYSIS

Criminal Profile Testimony

At trial, Officer Palmer, who had been investigating drug cases for two years, averaging two to four felony ar-

rests per day, testified about certain characteristics or behaviors of a typical drug dealer. He stated that drug dealers: usually receive money from the users; often have a lot of money and/or narcotics on their person; carry both very small and large quantities of drugs; often keep drugs in their mouths; are often users themselves; and that heroin is often wrapped in small balloons that resemble party balloons. He also explained how middlemen are used to complete drug transactions.

██ Avendano-Lopez asserts that the introduction of this testimony requires reversal because its prejudicial effect outweighs any probative value. But Avendano-Lopez failed to object to the substance of the officer's testimony during trial.[1] A party cannot appeal a ruling admitting evidence unless the party makes a timely and specific objection to the admission of the evidence.[2] RAP 2.5(a) states that an "appellate court may refuse to review any claim of error which was not raised in the trial court." These rules are intended "to afford the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials."[3] They are also supported by considerations of fairness to the opposing party: "the opposing parties should have an opportunity at trial to respond to possible claims of error, and to shape their cases to issues and theories, at the trial level, rather than facing newly-asserted error or new theories and issues for the first time on appeal."[4]

██ Even if we were to address the merits of Avendano-Lopez's contention, the officer's testimony was not "criminal profile" testimony. "Profile" testimony identifies a group as more likely to commit a crime and is generally "inadmissible owing to its relative lack of probative value

---

[1] The only objection Avendano-Lopez made was that one of the officer's answers was not responsive.

[2] ER 103.

[3] *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

[4] Lewis H. Orland & Karl B. Tegland, 2 *Wash. Prac.* 483. (4th ed. 1991).

compared to the danger of its unfair prejudice."[5] The officer's testimony in this case did not identify any group as being more likely to commit drug offenses. Rather, it was permissible expert opinion; it explained the arcane world of drug dealing and certain drug transactions and thus was helpful to the trier of fact in understanding the evidence.[6] "Profile" testimony and permissible expert opinion overlap, which underscores the necessity of objecting to questionable testimony during trial so that the trial court can limit any objectionable "profile" aspect and channel the testimony toward admissible expert opinion instead.[7]

█ Finally, because his defense counsel used the testimony to his own advantage, Avendano-Lopez cannot argue that the introduction of this testimony constituted prejudicial error.[8] Defense counsel cross-examined Officer Palmer about the ways in which Avendano-Lopez differed from the drug dealers described by the officer. The officer testified that, although drug dealers often have a lot of money on their person, no money was found on Avendano-Lopez when he was arrested. Similarly, he testified that, although dealers often carry a lot of narcotics, Avendano-Lopez was only in possession of a very small amount of heroin. Having chosen to use Officer Palmer's expertise to

---

[5]*State v. Braham*, 67 Wn. App. 930, 936, 841 P.2d 785 (1992). For examples of true "profile" testimony, *see State v. Petrich*, 101 Wn.2d 566, 576, 683 P.2d 173 (1984); *State v. Suarez-Bravo*, 72 Wn. App. 359, 364-65, 864 P.2d 426 (1994); *State v. Claflin*, 38 Wn. App. 847, 852, 690 P.2d 1186 (1984), *review denied*, 103 Wn.2d 1014 (1985); *State v. Maule*, 35 Wn. App. 287, 293, 667 P.2d 96 (1983); *State v. Steward*, 34 Wn. App. 221, 224, 660 P.2d 278 (1983).

[6]*See* ER 702; *see also State v. Cruz*, 77 Wn. App. 811, 813-14, 894 P.2d 573 (1995); *State v. Sanders*, 66 Wn. App. 380, 832 P.2d 1326 (1992); *State v. Strandy*, 49 Wn. App. 537, 543-44, 745 P.2d 43 (1987), *review denied*, 109 Wn.2d 1027 (1988).

[7]*See, e.g., Cruz*, 77 Wn. App. at 814 n.1 (after hearing argument on proffered "typical" heroin transactions testimony, trial court delineated those matters about which detective could testify).

[8]*See State v. Cunningham*, 93 Wn.2d 823, 832-33, 613 P.2d 1139 (1980).

his own advantage at trial, Avendano-Lopez cannot claim error on appeal.

### Prosecutorial Misconduct

Avendano-Lopez next contends that the trial court abused its discretion in denying his motion for mistrial, which was based on prosecutorial misconduct. Specifically, Avendano-Lopez objects to two questions the prosecutor asked of him on cross-examination: whether Avendano-Lopez had ever sold drugs before; and whether he was "legal in this country."

■ ■ We must determine whether the prosecutor's questions constituted misconduct and, if so, whether there is a substantial likelihood that the misconduct affected the jury verdict, thereby denying Avendano-Lopez a fair trial.[9] We determine the effect on the verdict by considering whether the testimony by the State's witnesses and by defense witnesses was believable or corroborated.[10] We reverse only if there is a substantial likelihood that the misconduct affected the jury verdict.[11] We hold that Avendano-Lopez was not prejudiced by these questions because it is unlikely that they affected the jury verdict.

### 1. Question Regarding Prior Drug Sales

During cross-examination, the prosecutor questioned Avendano-Lopez about his past use of heroin and prior sales activity:

[PROSECUTOR]: When you were arrested, you in fact were using heroin, weren't you?

---

[9]*State v. Charlton*, 90 Wn.2d 657, 663-64, 585 P.2d 142 (1978); *Suarez-Bravo*, 72 Wn. App. at 365; *see also State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). "The appropriate inquiry is whether the testimony, when viewed against the backdrop of all the evidence, so tainted the trial that [the defendant] did not receive a fair trial." *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992); *see also State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 497 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom., Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 1363, 122 L. Ed. 2d 742 (1993).

[10]*State v. Padilla*, 69 Wn. App. 295, 301, 846 P.2d 564 (1993).

[11]*Suarez-Bravo*, 72 Wn. App. at 366.

[AVENDANO-LOPEZ]: No, I didn't use it on that day.

[PROSECUTOR]: You use heroin the day before?

[AVENDANO-LOPEZ]: A few days before I used drugs.

[PROSECUTOR]: And you have, in fact, on occasion sold heroin haven't you?

[DEFENSE COUNSEL]: I am going to . . . make an objection. I think it is a broad question, should be confined to the date in question.

THE COURT: Proper cross.

[AVENDANO-LOPEZ]: I always work, I never sold drugs.

The question regarding prior sales activity constituted misconduct because evidence of other crimes, wrongs, or acts is inadmissible to show action in conformity with the prior crimes, wrongs, or acts.[12] Prosecutors are prohibited from inquiring into inadmissible matters.[13] "It is axiomatic that counsel cannot ask questions of a witness that have no basis in fact and are merely intended to insinuate the existence of facts to a jury."[14] The question, aside from being improper, was also irrelevant; whether or not Avendano-Lopez had previously sold narcotics had no legitimate bearing on whether, on the date in question, he possessed with intent to deliver.

We reject the State's assertion and the trial court's conclusion that Avendano-Lopez "opened the door" to this

---

[12]ER 404(b). We also note that although such evidence may be admissible for other purposes, none of the permissible purposes support the prosecutor's attempt to interject evidence of prior sales activity.

[13]RPC 3.4 (e) provides that lawyers shall not "allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . ."

[14]*Del Monte Banana Co. v. Chacon*, 466 So. 2d 1167, 1172, 10 Fla. L. Weekly 882 (Fla. Dist. Ct. App. 1985), *cited with approval in Estate of Lapping v. Group Health Coop.*, 77 Wn. App. 612, 618-19, 892 P.2d 1116 (1995).

question.[15] Tegland describes the "open door" doctrine as follows:

> A party may introduce inadmissible evidence if the opposing party has no objection, or may choose to introduce evidence that would be inadmissible if offered by the opposing party . . . . [T]he introduction of inadmissible evidence is often said to "open the door" both to cross-examination that would normally be improper and to the introduction of normally inadmissible evidence to explain or contradict the initial evidence.[16]

The doctrine is intended to preserve fairness: "It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it."[17]

▪ Avendano-Lopez did not "open the door" to questions about prior drug transactions when he volunteered on direct examination that he had recently been released from jail.[18] Washington courts have held that the defendant's testimony, on direct examination, regarding a prior conviction or incarceration, opened the door for cross-examination about the conviction by the State.[19] But here the prosecutor did not ask Avendano-Lopez about the conviction leading to his incarceration. The prosecution knew from a pretrial stipulation that Avendano-Lopez

---

[15]The trial court ruled that the defense had opened the door to such matters when Avendano-Lopez spontaneously indicated during direct examination that he had just gotten out of jail.

[16]Karl B. Tegland, 5 *Wash. Prac.* 41 (3rd ed. 1989).

[17]*State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[18]Avendano-Lopez testified as follows:

[DEFENSE COUNSEL]: Were you living by yourself or with someone?

[AVENDANO-LOPEZ]: A female friend was giving me — allowing me to live there, because I just came out of jail.

[19]*See, e.g., State v. Renfro*, 96 Wn.2d 902, 908-09, 639 P.2d 737, *cert. denied*, 459 U.S. 842 (1982); *State v. Griggs*, 33 Wn. App. 496, 502, 656 P.2d 529 (1982), *review denied*, 99 Wn.2d 1014 (1983); *State v. Wilson*, 20 Wn. App. 592, 594, 581 P.2d 592 (1978); *State v. Mattox*, 12 Wn. App. 907, 911, 532 P.2d 1194 (1975).

was in jail for simple possession, not for selling heroin. Avendano-Lopez's passing reference to his release from jail did not open the floodgates to questions about prior heroin sales.

The State argues that Avendano-Lopez opened the door to prior drug sales when his attorney asked Avendano-Lopez if he was working with Vargus to sell drugs. ER 404(b) bars evidence of prior bad acts to prove "action in conformity" with the prior acts, unless the evidence is offered to prove other matters such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[20] The State fails to explain how prior drug sales could be admissible under ER 404(b), and it appears that the only purpose of offering such evidence would be to prove that Avendano-Lopez acted in conformity with prior drug transactions, which ER 404(b) prohibits.

■ ER 404(a) allows the use of prior bad acts to prove the character of the accused, but only if the accused has offered evidence of that trait.[21] But Avendano-Lopez did not place his character in issue when he testified that he

---

[20]ER 404(b) states: "**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[21]ER 404(a) states:

"(a) **Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

"(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

"(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

"(3) *Character of Witness.* Evidence of the character of a witness, as provided in rules 607, 608, and 609."

had not sold drugs with Vargus.[22] "To open the door, the defendant, or a witness brought forward by the defendant, must first testify to a trait of character."[23] For example, in *State v. Renneberg*,[24] the defendant put her general character before the jury when she testified to her work experience, that she had attended college, that she had been a candidate in the Miss Yakima pageant and that she had participated in the glee club, drill team, pep club, and science club. The court held that this testimony implicitly painted a picture of a person most unlikely to commit grand larceny and that "[t]he state was entitled to complete the tapestry with [the defendant's] drug addiction."[25] Similarly, in *State v. Brush*,[26] the State was allowed to use the defendant's fourteen-year-old conviction to rebut evidence of Brush's good character where Brush and other defense witnesses testified about Brush's employment history, his duties as county fire marshall and building inspector, his participation in local social and political matters, and his financial dealings and credit history.[27] In contrast to *Renneberg* and *Brush*, Avendano-Lopez never placed his character at issue. The question cannot be justified on the ground that Avendano-Lopez "opened the door" to exploration of his general character.

Although the prosecutor's question regarding prior sales activity was misconduct, it was not prejudicial because it is unlikely that it affected the verdict. First, Avendano-Lopez denied that he ever sold drugs, and therefore the overall effect of the inquiry was likely exculpatory. Second, any inference that Avendano-Lopez was involved with

---

[22]*See State v. Brush*, 32 Wn. App. 445, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983).

[23]*Brush*, 32 Wn. App. at 450 (italics omitted) (quoting Orland & Tegland, *The Federal Rules of Evidence: Washington Follows the Federal Model*, 15 GONZ. L. REV. 277, 308 (1980)).

[24]83 Wn.2d 735, 736-38, 522 P.2d 835 (1974).

[25]*Id.* at 738.

[26]32 Wn. App. 445, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983).

[27]*Id.* at 452-53.

drugs was cumulative since Avendano-Lopez had already admitted a prior conviction for a drug offense.[28] Third, there was substantial evidence of guilt. The officers saw Avendano-Lopez drop an object which tested positive for heroin. Additionally, Avendano-Lopez gave the object to Vargus, who apparently attempted to sell the object to the known heroin user and then returned the object to Avendano-Lopez after the known heroin user apparently declined to purchase it. Avendano-Lopez never provided any explanation of the contacts between himself and Vargus. Finally, defense counsel neither objected to the substance of the question nor requested a curative instruction.[29] Because the improper question was not prejudicial, the prosecutor's misconduct in this instance does not necessitate reversal of Avendano-Lopez's conviction.

2. Question Regarding Immigration Status

The second objectionable question came at the very end of the prosecutor's cross-examination:

[PROSECUTOR]: Did one officer come and arrest you or were both officers present?

[AVENDANO-LOPEZ]: First Officer Palmer arrested me.

. . . .

[PROSECUTOR]: How long was it before another officer arrived?

[AVENDANO-LOPEZ]: Maybe about two minutes.

[PROSECUTOR]: Was that Officer Krause?

[AVENDANO-LOPEZ]: Yes, the one who was here.

. . . .

[PROSECUTOR]: And you had the syringe on your person, didn't you?

---

[28]Avendano-Lopez admitted during cross-examination that his conviction was for a drug offense. On re-direct Avendano-Lopez stated that the conviction was for possession.

[29]The only objection made by counsel for Avendano-Lopez was that the question was too broad and should be confined to the date in question.

[AVENDANO-LOPEZ]: Yes.

[PROSECUTOR]: You are not legal in this country, are you?

[DEFENSE COUNSEL]: I am going to make an objection.

THE COURT: I'll sustain.

[DEFENSE COUNSEL]: Irrelevant. Your Honor, I am going to ask for — I would like to be heard outside the presence of the jury.

THE COURT: We can carry on.

[DEFENSE COUNSEL]: I am sorry, Your Honor?

THE COURT: I will ask counsel to continue examination, we will take the matter up after.

Avendano-Lopez moved for a mistrial, arguing that the question about Avendano-Lopez's immigration status was irrelevant and prejudicial and that a curative instruction could not cure the error. The court denied the motion, stating that although it sustained the objection, the subject was an appropriate field for cross-examination in light of defense counsel's earlier questioning regarding Avendano-Lopez's background and his length of time in the country.

■ The trial court correctly sustained the defense counsel's objection. The prosecutor's question was grossly improper. It is well-established that appeals to nationality or other prejudices are highly improper in a court of justice, and evidence as to the race, color, or nationality of a person whose act is in question is generally irrelevant and inadmissible if introduced for such a purpose.[30] For example, in State v. Suarez-Bravo[31] our court of appeals

---

[30]See, e.g., State v. Belgarde, 110 Wn.2d 504, 507-10, 755 P.2d 174 (1988) (prejudice engendered by prosecutor's arguments regarding American Indian Movement mandated reversal); Schotis v. North Coast Stevedoring Co., 163 Wash. 305, 315-16, 1 P.2d 221, 78 A.L.R. 1427 (1931); State v. Suarez-Bravo, 72 Wn. App. 359; State v. Torres, 16 Wn. App. 254, 257-58, 554 P.2d 1069 (1976).

[31]72 Wn. App. 359.

held improper the prosecutor's line of questioning concerning Suarez-Bravo's neighborhood, his Hispanic co-workers, his fears of deportation, and his status as a Hispanic noncitizen. This irrelevant line of inquiry improperly implied that Suarez-Bravo was unreliable and probably possessed cocaine simply because he was a Hispanic living in a high-crime neighborhood and working as a farm laborer. The court found this and other prosecutorial misconduct rose to a level of "flagrant misconduct."[32] In another case, the court of appeals disapproved of a prosecutor's reference to defendants as Mexicans or Mexican Americans:

> We do not condone any reference to a person's race which is intended to slur or to disparage either the person or the race. . . . [the references'] effect may have been to impugn the standing of the defendants before the jury and intimate that the defendants would be more likely than those of other races to commit the crime charged. Such an inference is improper and prejudicial.[33]

Questions regarding a defendant's immigration status are similarly irrelevant and designed to appeal to the trier of fact's passion and prejudice and thus are generally improper areas of inquiry. Courts in other jurisdictions have uniformly condemned questions designed to appeal to national or other prejudice.[34] At least one court has held that the above principle "is equally applicable to evidence as to an individual's immigration status."[35]

Here, it appears that the question about Avendano-Lopez's immigration status was calculated and planned to

---

[32]*Suarez-Bravo*, 72 Wn. App. at 367.

[33]*Torres*, 16 Wn. App. at 257.

[34]*Sandoval v. State*, 264 Ga. 199, 442 S.E.2d 746 (1994); *see also People v. Maria*, 359 Ill. 231, 234, 194 N.E. 510, 512 (1935); *People v. Mohammed*, 151 A.D.2d 1018, 1019, 542 N.Y.S.2d 82, *appeal denied*, 545 N.E.2d 887 (N.Y. App. Div. 1989); *State v. Mehralian*, 301 N.W.2d 409, 418-19 (N.D. 1981); *Riascos v. State*, 792 S.W.2d 754 (Tex. App. 1990); *Garcia v. State*, 683 S.W.2d 715, 718-19 (Tex. App. 1984).

[35]*Sandoval*, 442 S.E.2d at 747.

incite the jury's passion and prejudice. The question was entirely unrelated to the subject matter of the preceding line of cross-examination and was completely irrelevant to the material issues of the case. The fact that the prosecutor chose to ask this highly improper question at the very end of her cross-examination suggests that she wished to send the jury to deliberate with Avendano-Lopez's ethnic heritage and immigration status still fresh in their minds. We strongly disapprove of the prosecutor's conduct in this case.

██ ██ The State's contention that Avendano-Lopez "opened the door" to the subject of his immigration status is entirely without merit. When Avendano-Lopez took the stand, his counsel elicited some background information:

[DEFENSE COUNSEL]: And where were you born?

[AVENDANO-LOPEZ]: Acapulco, Mexico.

[DEFENSE COUNSEL]: And where, essentially, have you been raised?

[AVENDANO-LOPEZ]: In Loredo [sic], Texas; San Antonio, Texas; Loredo [sic], Mexico; and two years here in Tacoma.

. . . .

[DEFENSE COUNSEL]: And where does your family reside?

[AVENDANO-LOPEZ]: The majority are in Mexico, in Texas, and in California.

But Avendano-Lopez's birthplace and length of time in the United States are mere background information; they have nothing to do with the subject of his immigration status. Accordingly, any cross-examination of Avendano-Lopez should have been confined to general background information; the prosecutor was not entitled to delve into the untouched subject matter of Avendano-Lopez's immigration status.

Nor did Avendano-Lopez place his character at issue. A defendant's general character can be a proper subject of

examination where the defendant makes a "blanket" assertion that he has always lived within the law and had never committed a criminal offense.[36] In such instances questioning about whether the defendant is an illegal alien may be proper.[37] Here the defense did not elicit any testimony about Avendano-Lopez's character. Thus, under *Renneberg* and *Brush*, there was no basis for the State's introduction of any alleged misconduct unrelated to the crime charged. "Testimony limited to the defendant's background . . . is not sufficient to put the defendant's general character at issue."[38]

Although the question was improper, we affirm the trial court's denial of Avendano-Lopez's motion for mistrial. The trial court is generally granted wide discretion in ruling on a motion for a mistrial.[39] In determining whether a trial irregularity warrants a new trial, the court should consider: (1) the seriousness of the irregularity; (2) whether the comment was cumulative to other evidence properly admitted; and (3) whether the irregularity could be cured by an instruction to the jury to disregard the remark.[40] The root of our inquiry is whether, when viewed against the backdrop of all the evidence, the trial irregularities denied Avendano-Lopez his right to a fair trial.[41]

We hold that the misconduct likely did not affect the jury's verdict for a number of reasons. First, the seriousness of the irregularity was not overwhelming because the

[36]*Adin v. State*, 727 S.W.2d 310, 312 (Tex. App. 1987).

[37]The defendant's testimony that he had never been charged or convicted of a crime in this country or another, authorized the prosecutor's question: "Don't you know that being an illegal alien in this country is the commission of an offense against the United States?" *Adin*, 727 S.W.2d at 312.

[38]*United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988).

[39]*State v. Butler*, 9 Wn. App. 347, 352, 513 P.2d 67, *review denied*, 83 Wn.2d 1001 (1973).

[40]*Post*, 118 Wn.2d at 620; *State v. Crane*, 116 Wn.2d 315, 332, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991).

[41]*See State v. Weber*, 99 Wn.2d 158, 165, 659 P.2d 1102 (1983).

objection to the improper question was sustained and Avendano-Lopez was not permitted to answer the question.[42] Second, as was noted above, the case against Avendano-Lopez was strong, and the evidence certainly supports Avendano-Lopez's conviction for possession with intent to deliver. Third, the jury was already aware of Avendano-Lopez's Hispanic background as it had been discussed by defense counsel on direct. Fourth, counsel for Avendano-Lopez did not attempt to obviate any resulting prejudice by requesting a curative instruction. In sum, we hold that, in light of all the evidence adduced at trial, this question did not deny Avendano-Lopez his right to a fair trial.

We emphasize, however, that the concept of harmless error is not a license to inject naked prejudice into any case.[43] A public prosecutor is a quasi-judicial officer charged with the duty to seek a verdict free of prejudice and based upon reason.[44] Prosecutors must act impartially and "with the object in mind that all admissible evidence and all proper argument be made, but that inadmissible evidence and improper argument be avoided."[45] As the *Torres* court noted:

> each trial must be conducted within the rules and each prosecutor must labor within the restraints of the law to the end that defendants receive fair trials and justice is done. If prosecutors are permitted to convict guilty defendants by improper, unfair means, then we are but a moment away from the time when prosecutors will convict innocent defendants by unfair means.[46]

The true test of our criminal justice system lies in how we treat the foreigner, the poor, and the disadvantaged,

---

[42]*See Mak*, 105 Wn.2d at 701 (seriousness of any irregularity was not major where the objectionable question was never answered).

[43]*See State v. Claflin*, 38 Wn. App. at 855 (Worswick, A.C.J., concurring).

[44]*Charlton*, 90 Wn.2d at 664-65.

[45]*Torres*, 16 Wn. App. at 263.

[46]*Torres*, 16 Wn. App. at 263.

not in how we treat those born in this country, the wealthy or the "respectable" established citizenry.[47] The dark shadow of arrogant chauvinism would eclipse our ideal of justice for all if we allowed juries to infer that immigrants, legal or illegal, were more likely to have committed crimes. We affirm Avendano-Lopez's conviction only because it is not likely that the misconduct substantially affected the outcome of the trial.

Affirmed.

SEINFELD, C.J., and BRIDGEWATER, J., concur.

Review denied at 129 Wn.2d 1007 (1996).

---

[47]*Coppedge v. United States*, 369 U.S. 438, 449, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962); *Griffin v. Illinois*, 351 U.S. 12, 16-17, 76 S. Ct. 585, 100 L. Ed. 891, 55 A.L.R.2d 1055 (1956); *Chambers v. Florida*, 309 U.S. 227, 241, 60 S. Ct. 472, 84 L. Ed. 716 (1940); David A. Sadoff, *The Public Defender as Private Offender: A Retreat From Evolving Malpractice Liability Standards for Public Defenders*, 32 AM. CRIM. L. REV. 883, 886 (Spring 1995).