# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52855-0-II |
| Respondent, | |
| v. | |
| NICHOLAS PETER ROSELLO, | UNPUBLISHED OPINION |
| Appellant | |

MELNICK, J. — A jury convicted Nicholas Rosello of one count of possession of methamphetamine with intent to deliver. Rosello argues that he received ineffective assistance of counsel and that the prosecutor committed misconduct. He also argues that the combined effect of errors at trial violated his right to a fair trial. We affirm.

## FACTS

The police executed a search warrant at Rosello's home. Rosello and at least four other people were present. The police seized approximately 7.6 grams of methamphetamine from Rosello's bedroom, as well as pipes, a digital scale, and plastic packaging items. The police also found and photographed Rosello's wallet, which contained an unspecified amount of cash and his driver's license.

At trial, Detective Jordan Sanders testified that, at the scene of the warrant execution, Rosello said he did not sell drugs, but "he had given methamphetamine to people on occasion." Report of Proceedings (RP) at 51. After being asked if the cash in his wallet came from selling drugs, Rosello paused, looked at the ground, and then denied selling drugs.

Sanders testified as an expert witness and told the jury that generally, 7 grams of methamphetamine was a quantity the police would "probably" see if someone was "starting to dabble in selling." RP at 44. In addition, he would expect to see money, digital scales, packaging material, and pay-and-owe sheets at a dealer's home. Police found a scale and some "plastic packaging items" in Rosello's bedroom but no pay-and-owe sheets. RP at 87. Sanders testified that a typical user of methamphetamine would buy around 0.2 grams for a single use at a time because most addicts could not afford to buy more than that at one time. However, it "would be fair" to say that a user with more money could get a better "deal" by buying in a larger amount for personal use. RP at 58.

On cross-examination, the following exchange occurred.

[Defense Attorney]. . . . So you had a confidential informant that you believed based on your conversations with him that there would be drugs at Mr. Rosello's residence?
[Sanders]. Correct.
[Defense Attorney]. And were you going in with the belief that Mr. Rosello was selling drugs or just possessing and using them?
[Sanders]. Selling. The informant had mentioned that they observed a drug sale inside the house.

RP at 51-52.[1]

Sanders testified that multiple people had been in the room with the drugs prior to the execution of the warrant. Rosello's attorney also asked Sanders if he had checked for fingerprints on any of the items found in Rosello's bedroom. Sanders said he had not because the police typically only tested for fingerprints in a case where no suspect existed. Rosello's attorney later

---

[1] The only other trial testimony about the confidential informant occurred when the detective stated on direct examination that "it was my confidential informant that got us the information to serve this warrant." RP at 46.

asked Sanders if "any of those people that [he] interviewed [said] that [Rosello] sold them drugs."

RP at 64.  Sanders responded, "Not that day."  RP at 64.

On redirect examination, the following exchange occurred:

[Prosecuting Attorney].  You just stated that none of the other folks at the residence had told you that the defendant sold them drugs that day?
[Sanders].  Correct.
[Prosecuting Attorney].  Did they say that he sold them drugs on any other day?
    [Defense]:  Objection; hearsay.
    THE COURT:  Overruled.
[Prosecuting Attorney].  You may answer.
[Sanders].  Some of the folks that said that they knew him to give away drugs or sell drugs in the past.
[Prosecuting Attorney].  Were other folks that were in the house that day arrested?
[Sanders].  Yes.
[Prosecuting Attorney].  For drugs?
[Sanders].  Correct.

RP at 64-65.

The court instructed the jury that delivery means "transfer of a controlled substance from one person to another."  RP at 149; Clerk's Papers at 17 (Instr. 11).

Rosello argued in closing that the prosecutor would have charged him with intent to deliver regardless of the evidence because the police went into the search assuming he was a drug dealer. He argued that officers ignored evidence that the drugs might not all belong to him because they did not send the drug packaging in for DNA or fingerprint analysis.

The State argued that the evidence indicated an intent to distribute.  It referenced the large quantity of methamphetamine, the multiple baggies of methamphetamine, smoking devices, scales, and "defendant's wallet [with] his identification, and over $500 in cash."  RP at 156. Rosello did not object even though no evidence supported the statement about the amount of cash.

The jury found Rosello guilty of one count of possession of methamphetamine with intent to deliver.  Rosello appeals.

ANALYSIS

I.   INEFFECTIVE ASSISTANCE OF COUNSEL

Rosello argues that he received ineffective assistance of counsel because his attorney elicited testimony that he had sold or given away drugs in the past, which allowed the prosecutor to use that information and rely on it during closing argument. Rosello contends that the information would have been otherwise inadmissible under ER 404(b) and the confrontation clause. Rosello further argues that his counsel had no valid tactical reason to elicit that evidence, and he was prejudiced because overwhelming evidence did not exist to prove his intent to deliver.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review ineffective assistance of counsel claims de novo. *Estes*, 188 Wn.2d at 457.

To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).

Representation is deficient if, after considering all the circumstances, "it falls 'below an objective standard of reasonableness.'" *Estes,* 188 Wn.2d at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). Generally, a court will not find ineffective assistance of counsel if "the actions of counsel complained of go to the theory of the case or to trial tactics." *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994). Therefore, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v.*

*Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). However, not all strategies or tactics are immune from attack, because "'[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" *Grier*, 171 Wn.2d at 34 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

Prejudice exists if there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Estes*, 188 Wn.2d at 458. It is not enough that ineffective assistance conceivably impacted the case's outcome; the defendant must affirmatively show prejudice. *Estes*, 188 Wn.2d at 458.

"'[T]he introduction of inadmissible evidence is often said to "open the door" both to cross-examination that would normally be improper and to the introduction of normally inadmissible evidence to explain or contradict the initial evidence.'" *State v. Avendano-Lopez*, 79 Wn. App. 706, 714, 904 P.2d 324 (1995) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, at 41 (3rd ed. 1989)).

Rosello's theory of the case, as put forth in closing argument, was that the police had decided prior to executing the warrant, that Rosello sold or possessed drugs with an intent to deliver. He argued that the police had already made up their minds about his guilt, and therefore did not investigate whether the other people present could have owned the drugs. As a result, the police did not fingerprint the bags containing methamphetamine or any of the paraphernalia found in the bedroom.

In support of this defense theory, Rosello's attorney elicited testimony from Sanders that the confidential informant "mentioned that they observed a drug sale inside the house." RP at 52. The testimony did not specify who had made the drug sale.

Rosello's attorney also asked Sanders a question that opened the door for the State to elicit testimony that, "[s]ome of the folks . . . said that they knew [Rosello] to give away drugs or sell drugs in the past." RP at 65. The questions by Rosello's attorney went to the defense theory that other people in the apartment could have owned some or all of the drugs found in the bedroom. However, counsel should reasonably have expected the questions would open the door to inadmissible testimony. Therefore, while the questions went to the defense theory of the case, the attorney's actions fell below an objective standard of reasonableness. We conclude that Rosello's counsel acted deficiently.

However, Rosello cannot show that absent his attorney's deficient performance, the result of the proceeding would have been different. On the day of the search warrant execution, Rosello admitted to the police that "he had given methamphetamine to people on occasion." RP at 51. Other independent evidence supported the verdict. The police found a large quantity of methamphetamine, consistent with someone selling it. They found a scale, a quantity of cash, and some packaging material.

Based on the evidence presented, there is not a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Because Rosello has not demonstrated prejudice, his ineffective assistance of counsel claim fails.

II.     PROSECUTORIAL MISCONDUCT

Rosello argues prosecutorial misconduct occurred because the prosecutor testified that Rosello had $500 cash in his wallet. He contends that because no evidence supported this statement, a substantial likelihood existed that the misconduct affected the outcome of the trial. We disagree.

Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

When the defendant fails to object to the improper statement at trial, the appellant must show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The appellant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or illintentioned nature of the remarks. *Emery*, 174 Wn.2d at 762.

"Although prosecuting attorneys have some latitude to argue facts and inferences from the evidence, they are not permitted to make prejudicial statements unsupported by the record." *State v. Jones*, 144 Wn. App. 284, 293, 183 P.3d 307 (2008).

In the present case, the prosecutor argued that the evidence supported a finding that Rosello had intent to distribute. In outlining the evidence, he stated that police found over $500 cash in Rosello's wallet. However, the no evidence supported the actual amount of cash in the wallet. The jury could not determine the amount of cash because the photograph showed that the wallet contained a single bill of unknown denomination. The statement was prejudicial because the large value of cash could lead the jury to infer that the money was from drug sales. The prosecutor made a statement that was unsupported by the record; therefore, it was improper.

However, Rosello did not object to the statement at trial. He has failed to show that the comment was flagrant or ill intentioned, as opposed to being a misstatement or an inadvertent statement. In addition, a curative instruction striking the statement would likely have cured any potential prejudice. Therefore, Rosello's argument on prosecutorial misconduct fails.

III.     CUMULATIVE ERROR

Rosello argues that the combined effect of errors at trial violated his right to a fair trial because the jury was encouraged to convict him on evidence that was not admitted or should not have been admitted. We disagree

The cumulative error doctrine applies when a trial is affected by several errors that "standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). To determine whether cumulative error requires reversal of a defendant's conviction, we must consider whether the totality of circumstances substantially prejudiced the defendant. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

Because Rosello has failed to establish that he received ineffective assistance of counsel, and prosecutorial misconduct, we reject Rosello's cumulative error argument.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Lee, C.J.