**FILED**
**MARCH 11, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39387-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAYMOND COLIN WETMORE-TINNEY, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Raymond Wetmore-Tinney requests a new trial in his prosecution

for possessing a stolen vehicle. He argues, among other contentions, that the State's

attorney engaged in misconduct when violating an order in limine by reason of asking

him about earlier convictions. We agree, reverse his conviction, and remand for a new

trial. While doing so, we deny Wetmore-Tinney's statement of additional grounds for

review (SAG), which seeks dismissal of the prosecution or remand for a new trial on

numerous grounds.

FACTS

The prosecution arises from Raymond Wetmore-Tinney's commandeering of a

dump truck. On August 9, 2022, Andrew Lee Bohn parked his 1996 Ford dump truck

outside the A&B grocery store in Lewiston, Idaho. Bohn owns and uses the dump truck

for his tree service business. Bohn exited the truck and went inside the store to use the

ATM and to buy a drink. As part of his usual practice, he left the keys in the truck's cup holder.

While walking into the store, Andrew Bohn passed appellant Raymond Wetmore-Tinney. Bohn had never seen him before. When Bohn exited the store, he saw his dump truck being driven away. He watched Wetmore-Tinney drive the dump truck through a nearby cemetery and then head north toward Lewis-Clark State College.

Andrew Bohn could not call police because his cellphone remained inside the dump truck. He flagged down a college security car and asked the driver to call the police.

Across the Snake River and the Washington State border, Asotin County Sheriff's Deputy Nathan Conley heard a dispatch about the theft of a white dump truck. Conley then espied a large white dump truck slowly perform an illegal U-turn across a double yellow line in the roadway. Deputy Conley followed the dump truck but lost its location near an off-ramp. Conley later re-observed the dump truck.

Raymond Wetmore-Tinney stopped the dump truck in a residential "turnaround gravel loop driveway" and then exited the truck. Report of Proceedings (RP) at 23. Deputy Nathan Conley arrested Wetmore-Tinney.

PROCEDURE

The State of Washington charged Raymond Wetmore-Tinney with possession of a stolen vehicle.

2

Raymond Wetmore-Tinney's criminal history consisted of fifteen convictions between 1988 and 2021. Before trial, Raymond Wetmore-Tinney sought to preclude introduction of evidence of the crimes. Conversely, during motions in limine, the State proposed to introduce three earlier convictions to impeach Wetmore-Tinney if he testified: (1) a 2014 conviction for tampering with a witness, (2) a 2014 possession of a stolen firearm conviction, and (3) a 1993 forgery conviction. Wetmore-Tinney objected to the forgery conviction from 1993 because of its age and lack of relevancy. The State agreed not to introduce the 1993 forgery but argued that the 2014 witness-tampering and possession of a stolen firearm convictions were admissible under ER 609 as crimes of dishonesty. The trial court agreed with the State and ruled that the State could question Wetmore-Tinney about the two 2014 convictions if he testified.

At trial, while testifying, Raymond Wetmore-Tinney admitted he took the dump truck. He claimed that he thought the dump truck belonged to an acquaintance. During direct examination, Wetmore-Tinney conceded he had earlier convictions for possession of a stolen firearm and tampering with a witness. He avowed that "both" of his convictions were from 2014.

During cross-examination of Raymond Wetmore-Tinney, the prosecutor asked:

> Mr. Wetmore-Tinney, you—those aren't the only things in your criminal history, are they?

RP at 176.  Defense counsel objected, and Wetmore-Tinney did not answer the

prosecuting attorney's question.  The prosecutor commented with the jury still in the

courtroom:

> Your Honor, the intimation was made that these were the only ones
> and that they were 2014 and no history since.  I'd like to make the record
> clear that that's not accurate.

RP at 176.

The trial court excused the jury to discuss the matter with the parties.  Outside the

presence of the jury, the prosecutor remarked:

> Your Honor, had Mr. Wetmore-Tinney simply testified that he'd
> been convicted of these two crimes, I would have let it go.  But, the fact
> that he made a point of saying that they were 2014, to give the jury the
> impression that he has been crime free since 2014 is not accurate.  In fact,
> he drew an 84 month sentence for those two crimes.  So, we've got a
> significant amount of time that he was crime free because he was in prison.
> He was just convicted last year [2021] of unlawful possession of a firearm
> in Spokane.  He testified that he had been spending time in Spokane and
> that he had been working and so forth.  He's misleading the jury.  He was
> in jail in Spokane last year.

RP at 177.  We wonder why the State did not seek, as part of its motion in limine, to

introduce the 2021 conviction for unlawful possession of a firearm.  The trial court

pondered the same question.

The trial court ruled:

> [T]his is very concerning to the Court.  Because, these are issues that
> needed to be brought to the Court's attention prior to this point in the trial.
> Now, I thought we had an agreement.  And, I don't think him just
> saying 2014 opens the door for the State to bring in other ones that they

4

could have brought in anyway. All right. That's just not the way this goes. I do not get—I do not believe the door was opened by Mr. Wetmore-Tinney when he said the convictions were 2014. If he had said I've been crime free since then or I have been good since then or I've been this since then, oh yeah, then we have another thing. But, simply stating 2014, no, no. I'm not gonna allow that. I'm sorry.

RP at 179.

Raymond Wetmore-Tinney moved for a mistrial on the basis that the prosecutor's statements about his other convictions were prejudicial, but the trial court denied the motion with no explanation. Wetmore-Tinney declined a curative jury instruction.

During closing argument, the prosecutor discussed Raymond Wetmore-Tinney's claim that he thought the truck belonged to a different person who would have let him drive it:

> Look around, ladies and gentlemen. We're adults. This is adult court. This is not juvenile court. We're not talking about a 12 year old who shoplifted a candy bar from Walmart. Oh, oh, I though[t] they were free candy bars. I thought it was okay to take them. I expect that from a 12 year old. What's the other one they always say? I was gonna put it back. 12 year olds, eight year olds, children. He was not going to put it back. He intended to deprive Mr. Bohn, and he did deprive Mr. Bohn.

RP at 231. Wetmore-Tinney did not object to this line of argument.

In rebuttal argument, the prosecutor stated:

> I agree with defense counsel. He said it and it rings true. It doesn't make sense. It doesn't make sense. It doesn't make sense that he thought that he knew the guy who he glared at and spit on the ground and mean-mugged. He thought that that guy was going to let him drive the truck. He thought it was somebody else who it wasn't who worked for a different company than the logo on the door. He thought he had permission. That

5

was his story.  That's what he told every single one of the cops.  I've got the number.  Call the guy.  John Meacham.  I've got permission.  That one fell apart.

So, what does he do?  He changes.  Oh, no, no, no, it wasn't that I thought I had permission.  It's a lark.  It's a joy ride.  Remember, this is adult court.  We're not talking about a 16 year old kid who takes his grandpa's truck into town when he's not supposed to.  We're talking about a guy who stole a dump truck.  It doesn't make sense.  You can't hide it.

RP at 244.  Defense counsel did not object to these comments.

In closing, the prosecutor also stated:

We live in a society that is held together with rules.  Rules older than us.  Rules older than this country.  Thou shall not steal.  He stole it.  He's guilty.

RP at 236.  Raymond Wetmore-Tinney did not object to the comment.

The trial court instructed the jury on the elements the State needed to prove to convict Raymond Wetmore-Tinney of unlawful possession of a stolen vehicle:

(1) That on or about the 9th day of August 2022, the Defendant knowingly possessed a stolen motor vehicle;
(2) That the Defendant acted with knowledge that the motor vehicle had been stolen;
(3) That the Defendant withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto; and
(4) That any of these acts occurred in Asotin County, the State of Washington.

Clerk's Papers (CP) at 88.

The trial court also instructed the jury on the disputed elements: (1) whether the defendant possessed the vehicle with "knowledge" that it was stolen and (2) whether the dump truck was "stolen:"

> A person knows or acts knowingly or with knowledge with respect to a fact or circumstance when he or she is aware of that fact or circumstance. It is not necessary that the person know that the fact or circumstance is defined by law as being unlawful or an element of a crime.
> If a person has information which would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

CP at 89.

> Stolen means obtained by theft.
> Theft means to wrongfully obtain or exert unauthorized control over the property . . . of another . . . with intent to deprive that person of such property.

CP at 91.

A jury convicted Raymond Wetmore-Tinney with possession of a stolen vehicle.

LAW AND ANALYSIS

Raymond Wetmore-Tinney contends the State's attorney committed four instances of misconduct during trial: (1) violation of a motion in limine by asking him about his previous criminal convictions, (2) referring to him as a child, (3) calling him a thief when he was not charged with theft but possession of a stolen vehicle, and (4) uttering personal opinions on his guilt. He claims these improper comments caused prejudice with the jury. Similarly, he assigns error to the trial court's declination of his motion for a mistrial after the prosecutor asked whether he had other convictions. We deem the assignment of error with regard to the questioning about earlier convictions and the motion for mistrial controlling and do not address other contentions of Wetmore-Tinney.

The burden of proving the impropriety of the prosecutor's comments and their prejudicial effect rests with the defendant alleging prosecutorial misconduct. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006); *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

*State v. Stith*, 71 Wn. App. 14, 856 P.2d 415 (1993) and *State v. Avendano-Lopez*, 79 Wn. App. 706, 904 P.2d 324 (1995) provide insight into the kind of errors that constitute prosecutorial misconduct. In *State v. Stith*, the State charged the defendant with drug delivery. The prosecutor commented during closing statements:

> "He was out of jail for a week and he basically was resuming his criminal ways. He was just coming back and he was dealing again."

*State v. Stith*, 71 Wn. App. 14, 16 (1993). This court ruled the comment was "flagrantly improper" because it violated a court order excluding such remarks, it directly suggested to the jury that the defendant had been previously convicted of a drug-related crime, which had not been presented as evidence during trial, and it suggested the defendant's guilt in the case by insinuating the defendant was selling drugs again.

In *State v. Avendano-Lopez*, the State charged the defendant with possession of cocaine with intent to deliver. The prosecutor asked the defendant a question during cross-examination: "whether *Avendano-Lopez* had ever sold drugs before." *State v. Avendano-Lopez*, 79 Wn. App. 706, 712 (1995). The court ruled the question to be improper because it was not relevant to the case, it suggested to the jury that the

8

defendant's current actions echoed with his past behavior, and it implied guilt by inadmissible conduct.

Raymond Wetmore-Tinney's prosecutor breached the court's directive by asking about other crimes. This exceeded the scope of the permissible evidence outlined in the motion in limine. Since the comment implied Wetmore-Tinney had other undisclosed convictions, the jury could have inferred he had the propensity to commit a crime.

Next, we assess whether the level of prejudice necessitated a mistrial or reversal on appeal. To prove prejudice, the defendant must prove a substantial likelihood that misconduct affected the jury's verdict. *State v. Weber*, 159 Wn.2d 252, 270, 149 P.3d 646 (2006); *In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 481-82, 965 P.2d 593 (1998). Reversal is mandated when, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). The prejudicial impact of a prosecutor's improper comments is not assessed by examining the comments alone but by considering them in the context of the overall argument, the case's issues, the evidence discussed, and the jury instructions provided. *State v. McKenzie*, 157 Wn.2d 44, 52 (2006).

In *State v. Stith*, 71 Wn. App. 14 (1993) despite curative instructions stating that "'the jury should totally disregard'" any inference that the appellant was involved in prior drug activity, the court found the prosecutorial misconduct sufficiently prejudicial that a jury instruction could not cure it. *State v. Stith*, 71 Wn. App. 14, 22 (1993). The

prosecutor's remarks conveyed personal assurances of the defendant's guilt, which not only suggested the trial was a mere formality, but also accused the defendant of additional criminal activity unrelated to the charges.

We deem *State v. Stith* and *State v. Avendano-Lopez* controlling. The prosecutor's inquiry into Raymond Wetmore-Tinney's prior convictions implied to the jury a pattern of criminal behavior based on irrelevant factors rather than the evidence presented in court. The prosecuting attorney implied Wetmore-Tinney's guilt because of earlier misconduct. Thus, reversible prejudice took place. The trial court should have granted a mistrial.

We encourage counsel, when believing that a defendant opened the door such that counsel may ask questions that otherwise violate an order in limine, to first address the trial court outside the presence of the jury to gain permission to ask the questions.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his SAG, Raymond Wetmore-Tinney asserts that his trial counsel performed ineffectively. We encounter difficulty understanding the extent to which Wetmore-Tinney asserts his counsel performed inadequately. At a minimum, he argues his counsel should have brought a motion to dismiss based on jurisdictional and venue grounds. He may also argue that his trial counsel should have sought joinder of other charges, although we do not know the nature of the other possible charges. He may argue that his counsel should have objected to the prosecution engaging in misconduct when referring,

10

during trial, to the dump truck as a stolen truck. Finally, he may argue that the prosecutor had a personal interest in the case, the court imposed a gag order on his counsel, the court delivered incorrected jury instructions, the court and the State violated his due process and equal protection grounds, and insufficient evidence supported his conviction for possessing a stolen vehicle.

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review." The purpose of a SAG is to "identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). Our review of a SAG is subject to practical limitations. For example, we consider only issues raised in a SAG that adequately inform us of the nature and occurrence of the alleged errors. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). The appellant must refer to the trial court record and to statutory and case law to support the statement. RAP 10.10(a). This court need not search the record in support of claims asserted by the appellant. RAP 10.10(a).

We decline to review most of Raymond Wetmore-Tinney's grounds of ineffective assistance of counsel, prosecutorial misconduct, and instructional error because the remedy for any of these grounds would be reversal of the conviction and remand for a new trial. We are already provided such relief to Wetmore-Tinney. We deny relief based

on an alleged personal interest of the prosecutor because of the lack of a citation to the record that shows any personal interest. We deny relief based on due process and equal protection grounds because Wetmore-Tinney fails to support the contentions with citations to the record or case law.

If we ruled that insufficient evidence supported the conviction, we would dismiss the prosecution rather than remanding for a new trial. The State must prove every essential element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). When reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We consider both circumstantial and direct evidence as being equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). A sufficiency challenge concedes the truth of the State's evidence and accepts the reasonable inferences that may be drawn from it. *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). This standard of review is highly deferential to the jury's determination and does not consider issues of credibility, persuasiveness, or conflicting testimony. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). After review of the evidence presented by the State, we conclude the evidence amply supported a finding of possession of a stolen vehicle.

CONCLUSION

We reverse the conviction of Raymond Wetmore-Tinney for possessing a stolen

vehicle and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_Fearing, J._

Fearing, J.

WE CONCUR:

_Lawrence-Berrey, C.J._

Lawrence-Berrey, C.J.

_Cooney, J_

Cooney, J